## NIX *v.* THE STATE.

1. In a case where the testimony of all the eye-witnesses to the occurrence makes a clear case of murder, and the theory of the accused is that the killing was either in self-defense, or under the fears of a reasonable man that his life was in danger, Penal Code, § 72, is inapplicable, and a refusal to charge the law contained in that section is not cause for a new trial.

2. In making his statement to the jury as provided for by statute, the prisoner, not being sworn as a witness, nor subject to cross-examination, nor restricted by the rules of evidence, can not lay the foundation for introducing in his favor evidence that would otherwise be inadmissible. Hence evidence of uncommunicated threats will not be received, nor, in a murder case, testimony as to the character of the deceased for violence, unless such evidence is relevant and competent unaided by the contents of the statement.

3. The failure of the judge in a murder case to charge the jury the provisions of the Penal Code, § 76, will not be reason for granting a new trial, when it clearly appears from the charge that the jury were informed that if they found the contentions of the accused to be true, they must return a verdict of not guilty.

4. The evidence warranted the verdict, and no reason appears for a reversal of the judgment refusing a new trial.

Argued April 22, — Decided May 10, 1904.

Indictment for murder. Before Judge Butt. Muscogee superior court. February 15, 1904.

*Hatcher & Carson* and *Cameron & Pinkston,* for plaintiff in error.

*John C. Hart, attorney-general, S. P. Gilbert, solicitor-general, McNeill & Levy, J. H. Lewis,* and *A. W. Cozart,* contra.

Cobb, J. Nix was convicted of murder, and complains that the court erred in refusing to grant him a new trial.

1. Complaint is made in the motion that the court erred in refusing to give numerous instructions as requested. After a careful reading of the charge, we have reached the conclusion that, so far as these requests contained propositions of law which were legal and pertinent, they were sufficiently covered by the general charge, which appears to be free from any error which was so prejudicial to the accused as to require a reversal of the judgment. The only requests which have given us any serious difficulty are those which contain the proposition that Penal Code, § 72, is applicable in any case where there is a forcible attack upon property at a place other than the habitation of the possessor. The section re-

ferred to is in the following language: "If after persuasion, remonstrance, or other gentle measures used, a forcible attack and invasion on the property or habitation of another can not be prevented it shall be justifiable homicide to kill the person so forcibly attacking and invading the property or habitation of another; but it must appear that such killing was absolutely necessary to prevent such attack and invasion, and that a serious injury was intended, or might accrue to the person, property, or family of the person killing." In *Pound's* case, 43 *Ga.* 89 (5), it was held that the law contained in this section was applicable only in cases where an attack was made upon property at the domicile and within the protection of the habitation; Mr. Chief Justice Lochrane saying, on page 137, in reference to this law: "This applies to the right of defense growing out of an attack upon a man, or his property, or family, where they are at his home; the household gods, so to speak, are regarded with peculiar sanctity in the protection of the law." In *Crawford's* case, 90 *Ga.* 710, the present Chief Justice, in referring to the *Pound* case, said that the law contained in the section referred to did not apply to every attack on or invasion of property, and that, whether the construction placed upon the law in *Pound's* case was correct or not, it had no application unless there was a serious injury intended, or might accrue, to the property which was the subject of the attack, and especially would have no application in a case where the property was of insignificant value, such as a small portion of a side of meat, unless the circumstances were such as to show that the attack might culminate in the commission of a felony. It has never been held in terms that the words "serious injury" in this section were the equivalent of "felony." Neither has it ever been held that a mere trespass upon property would justify a killing. It may be that a case might arise where a trespass upon property would be of such a grave nature as to amount to a serious injury within the meaning of this section; in other words, that a trespass in its nature, gravity, and consequences would be such that the law might authorize the taking of human life to prevent its commission. But such a condition of affairs, would be of rare occurrence in the transaction of human affairs, and certainly would not arise out of one of the ordinary and every-day quarrels about property rights. Manifestly a case like the present does not disclose the serious in-

jury to property which would authorize or justify the taking of human life. The father of the accused and the deceased were at issue in regard to the ownership of a strip of land containing about fifteen acres. The deceased had planted a crop of oats upon the land, and was, with his son, proceeding to gather the oats. According to the testimony for the State, the accused went to the place where the deceased man was at work with his son, and, without any provocation at the moment, deliberately fired upon the deceased while he was working with a cradle cutting the oats; at the time the fatal shot was fired the deceased holding the handle of the cradle with one hand, with the other stretched out to gather up the grain that had been cut. According to the statement of the accused, which must be considered in determining whether the request should have been given, he went out that morning to plant some watermelon seed, and carried his gun with him, as he claimed he usually did, to shoot crows. He planted some of the seed, and heard some one cutting oats on the land which was in dispute between his father and the deceased. Upon reaching that point, he found the deceased cutting the oats, and said to him that he had come there to ask him not to cut the oats. Then followed a colloquy between the deceased and the accused in reference to the ownership of the oats and the land, during which the son of the deceased laid down his cradle, walked to a tree where a gun was standing, and approached his father. The colloquy continued, and the deceased became abusive, and said to the accused that he was going to cut the oats, and would either kill the accused or get killed; and as he said this, reached back to his son, who was within three or four feet of him, to get the gun. At this time the accused fired the shot that killed the deceased. The son and the accused then exchanged shots at each other. Under this state of facts it is unnecessary to determine whether the construction placed upon the section in question in *Pound's* case was correct, or whether, under any circumstances, what would amount only to a trespass or a misdemeanor, that is, anything short of a felony, is the serious injury to property contemplated by the section. The judge charged the jury fully on the subject of the law contained in the Penal Code, §§ 70, 71. There can be no serious complaint made of the charge so far as it related to the law of self-defense and attacks upon the person, or the doctrine of reasonable fears.

Taking the statement of the accused as true, the killing of the deceased was not for the purpose of preventing a serious injury to the property of his father, that is, the oats growing in the field, but it was for the purpose of saving his own life; and even if the section is applicable in any case where the attack upon the property is not at the habitation, it had no application whatever in the present case, and it is therefore immaterial whether the court correctly construed it or not. It is questionable whether a child has a right under any circumstances to kill in order to protect the property of his parent. While one is guaranteed under the law the right to protect his property, under some circumstances even to the extent of taking human life, and children are justified in defending the person and reputation of their parents, we would be hardly prepared to hold, even if the question were directly before us, that the law of Georgia would authorize a son to take the life of a human being simply because the person killed was at the time cutting and preparing to take away from the land of his father a portion of a crop growing thereon, even if there could be no question that the title to the land was in the father.

2. A number of witnesses testified to declarations made by the deceased, in reference to the land and oats which were in controversy between him and the father of the accused. None of these declarations appear to have been communicated to the accused prior to the killing. Upon motion of the solicitor-general, all of these declarations were ruled out, upon the ground that they were not in their nature threats, and if so, they were not shown to have been communicated to the accused. Error is assigned upon this ruling, the contention being that the declarations were threats, and that even if they were not communicated, they were admissible to throw light upon the conduct of the deceased at the time of the killing. Without reference to the question as to whether the declarations could be properly construed to be in the nature of threats, there was no error in ruling them out; for, being uncommunicated, they were inadmissible for any purpose, unless it appeared from the evidence that at the time of the killing the deceased was the assailant. And to make the threats admissible it is not sufficient that the fact that the accused was the assailant appeared from the prisoner's statement. It must have appeared from the sworn evidence. *Vaughn* v. *State,* 88 *Ga.* 731. The

principle of this decision also applies to that assignment of error which relates to the refusal of the court to admit evidence of the violent and turbulent character of the deceased.

3. Complaint is made that the court erred in failing to charge the jury the provisions of the Penal Code, § 76, which is as follows:    "The homicide appearing to be justifiable, the person indicted shall, upon the trial, be fully acquitted and discharged." In *Waller's* case, 102 *Ga*. 684, it was held to be error to fail to charge the provisions of this section, when the charge consisted merely of reading to the jury the preceding sections of the Penal Code.    It clearly appears from the opinion of Mr. Justice Atkinson that if the judge otherwise . inform the jury that if they find the contentions of the accused to be true he would be entitled to an acquittal, the failure to read this section is not erroneous.    In this case the judge distinctly instructed the jury that if they found the version of the accused to be the truth of the case, they should acquit him.

4. The extracts from the charge upon which error is assigned, when taken in connection with the general charge, present no reason for ordering a new trial, even if they are erroneous at all.    Under the evidence for .the State the accused was guilty of murder. Under his statement he was not guilty of any crime.    In determining from the facts where the truth lay it was utterly immaterial who was the owner of the land upon which the homicide was committed, and therefore there was no error in refusing to admit in evidence the deed showing title in the father of the accused, or the record showing the judgment in a suit between the father of the accused and the deceased, in which the question of title was incidentally involved.    There was no error in admitting evidence that the father of the accused, on Tuesday prior to the killing, which occurred on Saturday, carried his gun with him while working in the field, the father being introduced as a witness, and this evidence throwing some light upon the state of his feelings.    The ground of the motion containing alleged newly discovered evidence furnishes no reason for reversing the judgment.    Such a ground is addressed to the discretion of the trial judge, and it takes an extreme case for this court to control his discretion in such a matter.    The alleged newly discovered evidence related to threats made by the deceased.    As will appear from the foregoing, if this

evidence had been offered at the trial it would have been inadmissible in the then state of the evidence; and as it appeared that all of the eye-witnesses had been examined at the trial, and no foundation was laid in the evidence for the admission of testimony of uncommunicated threats, the discretion of the trial judge in refusing to grant a new trial on account of the discovery of other uncommunicated threats than those which were excluded at the trial will not be interfered with. The evidence for the State not only authorized but demanded a verdict for murder. The jury having seen proper to disregard the version of the transaction as detailed in the prisoner's statement, and the trial judge having approved their finding, we will not interfere.

*Judgment affirmed. All the Justices concur.*