## McDONALD v. THE STATE.

1. In a case where the testimony of all the eye-witnesses to the homicide makes a clear case of murder, and the theory of the accused is that the killing was either in self-defense or under the fears of a reasonable man that his life was in danger, section 72 and the last clause of section 70 of the Penal Code are inapplicable, and a failure to give in charge the law contained therein is not cause for a new trial.

2. It is not error for the court, upon the trial of a criminal case, in its charge to the jury, to read all of section 1010 of the Penal Code except the last sentence thereof, without further commenting upon the law contained in the section. It has been frequently said by this court that such is the better practice.

3. There was no merit in any of the exceptions made to the charge.

4. Affidavits relating to a ground of a motion for a new trial which are not referred to therein, nor attached to the motion as exhibits, nor filed under order of the judge and then made a part of the record, can not be considered by this court when transmitted as a part of the record.

5. The evidence warranted the verdict.

Argued October 25,—Decided November 13, 1907.

Indictment for murder. Before Judge Martin. Pulaski superior court. July 26, 1907.

Gordon McDonald, alias J. B. McDonald, was convicted of murder for the killing of Colar Chaney. The case is before this court for review on a writ of error sued out by the accused assigning error upon the overruling of his motion for a new trial. According to the testimony for the State, two of whose witnesses claimed to have been eye-witnesses to the tragedy, Colar Chaney, Herschel Burns, Maud Wynne (one of the State's witnesses), and the accused and his wife were peaceably and quietly sitting around the fire in the home of the accused—Chaney and Burns, having gone there with the accused and on his invitation—in the forenoon of December 23, 1906, when the accused, who had taken a few drinks of whisky, but did not seem to be drunk, suddenly picked up a hammer and threatened to break down the windows. His wife endeavored to dissuade him from doing this, when he drew a pistol and threatened to shoot Maud Wynne and every one else in the house; whereupon Burns, in a friendly way, begged him not to shoot and to put up his pistol. At this juncture the two women ran from the house in fright, and soon thereafter the three men came out into the front yard, where

the accused shot Chaney twice in the breast and once in the neck and then shot Burns in the forehead, killing them both instantly. Neither Chaney nor Burns was making any effort whatever to harm the accused at the time they were shot, and neither of them had a weapon of any kind in his hand. No weapons were found on the ground about the bodies of the deceased, though search was made therefor soon after they were killed, and no weapon was found upon the person of either of them, except a closed pocket-knife in the pocket of Chaney, over which there was a handkerchief. Neither of them endeavored, in any way, to injure the person, property, or habitation of the accused.

So much of the statement made by the accused on his trial as is material to the points up for adjudication was as follows: "They [Colar Chaney and Herschel Burns] were both drinking. They came in [into the house of the accused] and both commenced cursing and abusing me, calling me all kinds of low-down things, and began throwing the chairs around in the house and otherwise misbehaving. About this time Maud Wynne came in my house. They gave Maud Wynne two or three drinks, and continued cursing and throwing things around in my house. Herschel Burns said, with an oath in his mouth, 'You have ordered Maud Wynne not to come to your house. This is not your house, but my father's house; and she shall come here whenever she gets ready.' I asked them to go out quietly two or three times. They did not notice what I said. I told them, if they did not stop, I would put them out of my house. About this time my wife and Maud Wynne jumped up and went up to Mrs. Tony Burns'. . . After they left, . . Colar Chaney [and Herschel Burns?] got in one corner of the house and began talking to one another, and I went to the porch to see how far my wife had gone. . . While standing upon the porch Mr. Herschel Burns walked up behind me and grabbed me in the collar. I snatched aloose from him and turned to his front. Then he grabbed me in my front collar and he said, 'Gordon McDonald, God damn your soul, there aint anybody afraid of you.' Then he hit me in the left eye with his fist and knocked me down on the ground and jumped on top of me. I saw Colar Chaney come down the steps of my house, opening his knife. I told Herschel Burns to get off of me. He says, 'God damn your soul, I am going to cut your throat.' He pulled out

his knife and started to open it, and when he did I pulled out my pistol and raised it above my head and shot it one time, striking Herschel Burns over the left eye. I then reached over with my left hand and threw him off of me and got up. Colar Chaney, when I got up, was in two feet of me with his knife open, swinging it and saying, 'I am going to cut every gut in you out.' I backed six or seven steps and stopped and told him if he came any further I would kill-him. He did not notice what I said and started towards me. I shot one time. He did not stop. I shot again, and he still kept coming on me. I shot him the third time, and he fell. . . The reason why I shot at the time I did, it was either to kill or be killed. I shot to save my own life. Herschel Burns was mean, undermining, fussy and dangerous. Colar Chaney was better natured than Burns, but while drinking I considered him to be dangerous. I regret the necessity of having had to kill these two men in self-defense. Gentlemen of the jury, the reason why I had the pistol was to protect myself. I had become thoroughly frightened from the noises and disturbances around my house at night, and I further knew that my life was in constant danger, and bought the pistol a short time before the difficulty, for the express purpose of protecting myself, my wife and my home." The defendant introduced witnesses who testified that soon after the shooting one of the defendant's eyes was black and blue, as if from a blow; that his clothing was torn and there were signs of a struggle in his front yard, and that, on account of intervening cotton-stalks, fences, etc., one of the State's witnesses, who testified that she saw the shooting, could not have seen it from where she said she was at the time. Certain of defendant's witnesses also testified that on account of the bad reputations of the two witnesses for the State, who claimed to have seen the shooting, they were not worthy of belief. The State introduced witnesses in contradiction of all that defendant's witnesses testified to.

The grounds of the original motion for a new trial were, that the verdict was contrary to law, contrary to the evidence, and without evidence to support it. The grounds contained in the amendment to the motion were as follows: (1) Because the court charged the jury: "The defendant pleads not guilty to the offense alleged or charged against him. He says that under the

law he is guilty of no offense; that what he did was justifiable; that while he shot Colar Chaney, he did so under such circumstances that he was authorized and justified in so doing under the law of the State; that he did so in order to save his life; and that constitutes the issue, the State claiming on the one side that he is guilty of the offense of murder, and he claims that he is guilty of nothing; and if you should find from the evidence in this case that he shot this party under circumstances of justification, then you could not find him guilty. If you find that he shot him under such conditions and circumstances in order to protect his life, then he would be guilty of no offense. On the other hand, if you find under the law and the evidence, under the contention of the State, that he killed this party, Colar Chaney, without cause, then you would be authorized to find him guilty." The exceptions to this charge were, that it limited the defense "to shooting in order to save life," and that it took away from the consideration of the jury the right one has to kill in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on either. (2) Because, after charging the doctrine of reasonable fears, the court instructed the jury: "The sufficiency, however, of the fears is a question exclusively for the jury—to be passed upon and determined by the jury; and if there be a reasonable doubt as to the defendant acting under such fears, or had sufficient reason to feel that it was necessary to kill in order to save his own life, the defendant is entitled to the benefit of the reasonable doubt and you should give it to him; that is, if you believe under the evidence in the case, and under the statement of the defendant made, that he killed these parties under such circumstances that he believed his own life was in danger, he does not have to show that beyond a reasonable doubt, but if there is a reasonable doubt as to how he acted, he is entitled to the benefit of it; and if you have a doubt about it one way or the other as to whether it be true or not, you must give it to the defendant." The exceptions to this charge were the same as those made to the charge quoted in the first ground of the amendment to the motion; and, further, that this charge "was in the nature of an expression of opinion upon the evidence in said case, in that the court said, 'and under the statement of the defendant that

he killed these parties under such circumstances as that he be-
lieved that his own life was in danger;" and that the charge
"tended to impose upon the defendant the necessity of ·defending
himself against the killing of Herschel Burns as well as Colar
Chaney, while the defendant was on trial for the killing of Colar
Chaney only." (3) Because the court charged: "Where the
defendant sets up as a defense that he acted upon the fears of
a reasonable man that his life was in danger at the hands of the
deceased, and that he really acted under those fears and not in a
spirit of revenge, the defense does not have to be proved beyond
a reasonable doubt," etc. The exceptions were the same as those
to the charge set out in the first ground of the amendment to
the motion. (4) Because the court charged, "that threats ac-
companied by menaces, though the latter do not amount to an
act of assault, may in some instances be sufficient to arouse the
fears of a reasonable man that his life is in danger, · or that a
felony is about to be perpetrated upon him." The exceptions to
this charge were those made to the instruction first quoted above,
and, further, that this charge was "calculated to mislead the jury;
in that it does not clearly define what kind of a felony he may kill
his antagonist to prevent." (5) Because the court charged: "I
further charge you that the danger which would justify a killing
need not be real, where the slayer was without fault, but only
such as would lead a reasonable man to believe in its reality or
for apprehending a design to take his life, or to commit a felony
upon his person, or for believing the danger imminent and that
such design will be accomplished." The same errors are assigned
upon this charge as upon the charge complained of in the first
ground of the amendment to the motion, and it is further alleged
that "the words 'felony upon his person,' as here used, . .
are too vague and uncertain to present to the consideration of the
jury that the defendant could kill to protect his person from
great bodily harm amounting to a felony." (6) Because the court
charged: "Now in this case if you believe that at the time of
the killing of Chaney by Gordon McDonald that these parties
made an assault upon him, or that the conditions surrounding
McDonald at that time were such as to cause him to believe that
his life was in danger and that he acted under the influence of
those fears, and you believe that the circumstances were such as

would make a man of ordinary courage act to save his own life, and believe that the defendant did so, and did not kill this party through revenge, but killed him to save his own life; if you believe that to be the truth of the case, or if you have a doubt upon the question, it would be your duty to give the prisoner the benefit of the doubt and acquit him." This charge was excepted to on the same grounds as those taken to the charge complained of in the first ground above stated of the motion; and, further, because, "if it was the intention of the court to charge the law of a joint felonious intent and attack, said charge was too vague, indefinite, and uncertain to correctly lead the minds of the jury;" and because it tended "to place the defendant upon trial for the killing not only of Colar Chaney but of Herschel Burns." (7) Because the court erred in charging: "In every criminal trial the prisoner shall have the right to make to the court and jury such statement in the case as he may deem proper in his defense. It shall not be under oath, and shall have such force only as the jury may think right to give it. They may believe it in preference to the sworn testimony in the case." The exception was, that the charge was not sufficiently full, in that the jury were not informed that they might "believe it in part or disbelieve it in part." (8), "Because the court further erred in this; that he did not give in charge to the jury section seventy-two of the Criminal Code of the State of Georgia." (9) Because the court further erred in that, "while it gave in charge section seventy of the Criminal Code of Georgia, it so restricted, confined, and narrowed its application as to confine defendant's defense to one portion only of said section; that is to say, that he might kill another only to protect his life." (10) A new trial should be granted because of certain specified newly-discovered evidence.

T. C. Taylor and D. R. Pearce, for plaintiff in error.

John C. Hart, attorney-general, E. D. Graham, solicitor-general, and W. L. & Warren Grice, contra.

FISH, C. J. (After stating the facts.)

1. There was no merit in the first ground of the amendment to the motion for a new trial. The court, in stating the contention of the accused, informed the jury that the accused claimed that he was justified in shooting Colar Craney, that he did so in order to save his own life; and instructed them that if he shot

to protect his own life, he would be guilty of no offense. The court merely repeated, in substance, the defense set up by the accused in his statement on the trial, viz.: that he had to kill or be killed, that he shot to save his own life—that he had to kill the two men in self-defense. Moreover the court gave in charge section 70 of the Penal Code, defining justifiable homicide, a part of the definition there given being the killing of a human being "in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on either," omitting the last clause of the section in reference to the killing of one who attempts, in a riotous and tumultuous manner, to enter the habitation of another for the purpose of assaulting some person therein. The court also fully instructed the jury as to what constitutes a felony. The accused was not really entitled to any instruction as to his right to slay one who might be attempting, by violence or surprise, to commit a felony upon his habitation or property, as there was absolutely no evidence in the case to authorize such an instruction, and, as we have seen, the only felony claimed by the accused, in his statement on the trial, to have been attempted upon him was an attempt by the two persons killed to take his life. *Nix* v. *State,* 120 *Ga.* 162.

2. We have just dealt with one of the exceptions to the charge set out in the second ground of the amendment to the motion. The court did not, in this charge, express an opinion upon the evidence, but merely referred to the statement of the accused; that he killed the two persons under circumstances which authorized him to believe that his own life was in danger. Nor did the language here used by the court tend to impose upon the accused the necessity of defending himself for the killing of Burns.

3. The portion of the charge set out in the third ground of the amendment is not subject to the exception taken to it. As we have said, in the first division of this opinion, the only defense set up by the accused, in his statement to the jury, was that he shot in order to protect his own life; and there was no evidence tending to sustain any other defense. The court did instruct the jury, in other parts of the charge, as to the right of the accused to defend himself against a felony about to be committed upon his person.

4. One of the assignments of error upon the charge, in the fourth ground of the amendment to the motion, is also sufficiently dealt with in the first division of this opinion. As we have said, the court fully instructed the jury as to the definition of a felony, and the charge here complained of was not erroneous because it failed to "define what kind of a felony the [accused] may kill his antagonist to prevent." What is said in this connection sufficiently deals with the exceptions to the part of the charge complained of in the fifth ground of the amendment to the motion for a new trial.

5. In that part of the charge excepted to in the sixth ground of the amendment, the court merely applied the doctrine of reasonable fears to that theory of defense set up by the accused in his statement to the jury; and the language of the charge is not susceptible of the construction that it was "the intention of the court to charge the law of a joint felonious intent and attack," further than applicable to the statement of the accused that the two persons killed were, at the time, attempting to take his life. Neither did the charge here complained of tend to place the defendant upon trial for the killing of Burns, as well as Chaney.

6. The court gave in charge to the jury the section of the Penal Code in reference to the right of the accused, in the trial of a criminal case, to make a statement to the jury. This court has frequently held that this is a sufficient instruction in that respect, and really preferable to an elaborate explanation of the section.

7. In the eighth ground of the amendment to the motion, complaint was made of the failure of the court to give in charge section 72 of the Penal Code, which reads as follows: "If, after persuasion, remonstrance, or other gentle measures used, a forcible attack and invasion on the property or habitation of another can not be prevented, it shall be justifiable homicide to kill the person so forcibly attacking and invading the property or habitation of another; but it must appear that such killing was absolutely necessary to prevent such attack and invasion, and that a serious injury was intended, or might accrue to the person, property, or family of the person killing." There was no evidence that made the provisions of this section applicable to the case,

nor was there in the statement of the accused anything which made them pertinent.

9. What we have said in dealing with the first ground of the amendment to the motion sufficiently disposes of the ninth ground, wherein it is complained that the court, while charging the provisions of section 70 of the Penal Code, restricted their application to the right to kill another to protect one's own life.

10. The tenth ground related to certain alleged newly-discovered evidence, which is briefly referred to in that ground of the motion. There is, however, no reference in that ground, or elsewhere in the motion, to any affidavits in support of this tenth ground. Immediately following the motion in the record, we find what purport to be copies of a number of affidavits, in each of which there is a recital that it is to be used upon the motion for a new trial in this case. None of them appears to have been filed under order of court and thus made part of the record, identified, or attached in any way to the motion or made a part thereof, and therefore none of them can be considered by this court in passing upon the ground of the motion based upon alleged newly-discovered evidence. *Glover* v. *State*, 128 *Ga.* 1.

11. There was ample evidence to authorize the verdict, which was approved by the trial judge, and this court can not say that he abused his discretion in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur.*