## PRIDE v. THE STATE.

1. Where a witness testified that she was near the scene of a homicide, and in a general way described her position and the relative positions of the deceased and the accused, and it appeared that the character of the place and certain obstructions were such that the witness could not portray as complete a picture of the scene as was presented to her view, it was competent for the witness to testify: "From where I was standing I could have seen [the deceased] if he had been standing up."

2. On the trial of a defendant charged with murder, where it is not shown otherwise than by the statement of the accused that the deceased was the assailant in the fatal rencounter, it was not erroneous to exclude evidence of a previous uncommunicated threat made by the deceased against the accused.

3. On the trial of a person charged with murder, the accused, in making her statement before the jury, referred to a past wrong committed by the

person slain, and stated that on account of that wrong the accused was about to swear out a warrant, when the offender again assaulted her with a knife, and that she fired the fatal shot to prevent the assault. While instructing the jury the judge charged: "To kill a person on account of a past offense or indignity from the person killed, if the killing takes place in anger and resentment of such offense or indignity offered, however grievous such indignity or offense may be, it would be murder. I charge you it would be unlawful to kill another in resentment of a past injury." This charge was not open to the criticism "that it was not adapted to the facts."

4. Other grounds of the motion for new trial, which relate to certain charges to the jury, are not of such character as to require the grant of a new trial.

5. The evidence was sufficient to support the verdict, and there was no abuse of discretion in refusing to grant a new trial.

Argued October 18,—Decided November 17, 1909.

Indictment for murder. Before Judge Worrill. Early superior court. July 10, 1909.

*Hawes & Pottle* and *Spencer R. Atkinson,* for plaintiff in error.

*John C. Hart,* attorney-general, and *J. A. Laing,* solicitor-general, by *Reuben R. Arnold,* contra.

ATKINSON, J. 1. The defendant was convicted of murder, and made a motion for a new trial, which being overruled she excepted. Ella Pride was the defendant. Will Smith was the deceased. Minnie Smith was the wife of Will Smith, and a witness for the State. Among other things she testified, in substance, as follows: Will Smith and Charles and Jerry Pride, the latter two being respectively the husband and stepson of the accused, were all picking cotton in the same field, the two Pride men being closer to Will Smith than witness, and all three of the men being close to the road. At the scene of the homicide some of the ground was smooth and some of it was not. The place where deceased fell "was kind of slanting like, not much though; I can't tell exactly how much; the rows ran around the slant." Witness was about 25 yards from Will Smith when she heard a conversation between him and Ella Pride with reference to a hat, and the conversation was immediately followed by the report of a pistol, which proved to be the fatal shot. The cotton was higher than witness and thick, and she could not see them exactly. There was also a little cotton-house between witness and the place where Smith was shot, but she could see around the house from the place where she was standing at the

time of the shooting. She saw Ella Pride and the smoke from the pistol, but did not see Will Smith or either of the Pride men. Will Smith was taller than Ella Pride. Witness did not know whether Will Smith was stooping down or standing up at the time of the shooting, but said that if he had been standing up looking as she was she could have seen him. One of the grounds of the motion for new trial complained of the refusal of the court to exclude the testimony of this witness, "from where I was standing I could have seen Will Smith if he had been standing up," upon the objection urged that it was a mere conclusion of the witness. In 1 Greenleaf on Evidence (16th ed.), §441 (b), pp. 549-50, it is said that the opinion rule is "based on the thought that where the data for drawing an inference are before the jury, or can be placed before them, it is superfluous to add by way of testimony the inference which they can equally well draw for themselves." Under such circumstances it is further said "that the witness's influence is superfluous and unnecessary, and should, therefore, not be brought into the case. . . The witness's opinion is excluded, not because inferences as such are objectionable (for a witness's knowledge and all knowldege is made up of inferences), but because the inference, under the circumstances, is superfluous; and because if one person could be summoned and inquired of in this way, then the opinions of a score could equally be asked and all of them superfluous and calculated to encumber the trial without adding anything to the essential data already before the jury." But after stating the rule and the reasons therefor above given, the text, continuing, recognizes as an exception thereto that the opinion of a layman or common observer may be received in evidence if such person "observed the matter in issue and can not adequately state or recite the data so fully and accurately as to put the jury completely in the witness's place and enable them to equally well draw the inference." The meaning of the text is that under the circumstances enumerated in the exception the inference is not superfluous, but is of some assistance to the jury. That is really made the test. If the circumstances are such as to render the inference superfluous, it is excluded; if not, it is admitted. The exception alluded to is practically recognized in *Mayor etc.* v. *Wood,* 114 *Ga.* 370 (40 S. E. 239), where it is said: "The opinion of a witness is not admissible in evidence when all the facts and circumstances are

capable of being clearly detailed and described so that the jurors may be able readily to form correct conclusions therefrom." It will be observed that the application of the general rule made in the case cited was predicated on the non-existence of circumstances sufficient to bring the case under the exception. To the same effect are rulings in the cases of *Southern Mutual Insurance Co.* v. *Hudson,* 115 *Ga.* 638 (42 S. E. 60) ; *Central of Georgia Railway Co.* v. *Goodwin,* 120 *Ga.* 83 (47 S. E. 641) ; *Thomas* v. *State,* 122 *Ga.* 151 (50 S. E. 64) ; *O'Neill Manufacturing Co.* v. *Harris,* 127 *Ga.* 643 (56 S. E. 739) ; *Moore* v. *Dozier,* 128 *Ga.* 95 (57 S. E. 110) ; *Robinson* v. *State,* 128 *Ga.* 255 (57 S. E. 315). The testimony objected to in the case before us involves the expression of a negative inference by a common observer, based on an observation which she testified that she made. If the witness spoke truthfully, it did not require an extended operation of the reasoning faculty to enable her to draw the inference involved in the testimony objected to. If she had the opportunity of seeing Will Smith and did not see him, though she were looking where she could have seen him if he had been standing up, the inference that he was not so standing was one that any ordinary person would naturally draw. There are many instances where negative inferences have been received in evidence under such circumstances, some decisions holding that the inference was a mere statement of fact, and others that if it involved the expression of an opinion the circumstances were such as to bring the case within the exception rather than under the general rule. The case of Atchison, Topeka & Santa Fé R. Co. *v.* Miller, 39 Kan. (Randolph) 419 (18 Pac. 486), was an action for damages on account of negligence in killing certain cattle. Two witnesses testified that the whistle was not sounded, and they were satisfied that it was not; that they were in a position to have heard it if it had been sounded. In discussing the admission of this testimony, the court expressed the opinion that the testimony was "more in the statements of the facts than in the opinions of the witnesses, . . but they are such observations as are made by men of ordinary intelligence without any special knowledge, learning, or skill; but even if it was the opinion of the witness and not a fact about which he was testifying, still we think it was such an opinion as falls within the exception to the general rule. The very nature of the circumstances about

which they were testifying, with the surroundings, conditions of the atmosphere, wind, organs of hearing, obstructions, and a host of other incidents, could not be portrayed to a jury in such a manner as to enable them to draw a conclusion from the facts." It is quite probable that under the general current of decisions from other States the inference involved in the testimony objected to in the case at bar, relating, as it did, merely to the probability, under the circumstances narrated, of the witness seeing Will Smith if he had been in a standing position, was a mere statement of a fact, and was in no sense the expression of an opinion. But we hold that whatever element of opinion there may be involved in the testimony, it falls within the exception to the general rule, and was not objectionable on the ground taken. In *Welch* v. *Stipe*, 95 *Ga.* 762-4 (22 S. E. 670), it was said: "Before the opinion of a non-expert witness can be considered, it must appear not only that the witness had the opportunity of learning the facts upon which the opinion is predicated, but it must appear that the opinion was in fact based upon the facts and circumstances so ascertained, and not upon bare conjecture; and, in addition to this, it must appear that the witness, in the expression of the opinion, speaks with reference to the facts upon which it is predicated." We think the facts from which the witness drew the inference involved in the testimony objected to were sufficiently stated to bring the case within the rule quoted from *Welch* v. *Stipe,* supra. Whether testimony falls under the general rule, or the exception thereto, must depend upon the facts and circumstances of each case. In the case now before us the conditions were such that the witness could not describe them in such way as to present to the jury a complete picture of all that she testified that she saw. She could not testify to the exact height and thickness of the cotton, or the contour of the soil, or of the position of the cotton-house, or of the condition of her sense of sight; so that, using her testimony as a basis, the jury could say as well as she could whether or not she could have seen Will Smith if he had been standing. The most that she could do would be to give a general description, estimated or founded upon other inferences, which, after all, would fail to portray the picture exactly as she saw it. Under these circumstances, the statement by the witness of how the scene appeared to her could be of some probative value, and ought not to be called entirely

superfluous.   What weight should be given to the testimony should be determined by the jury according to their opinion of the credibility of the witness, taken in connection with the reasonableness of her testimony in the light of all the facts and circumstances upon which the inference was founded.   See, on the general subject, note to Alabama Great Southern R. Co. *v.* Frazer, 93 Ala. 45 (9 So. 23, 30 Am. St. R. 28) ; 3 Wigmore on Evidence, §§ 1976, 1977 ; 17 Cyc. 83.

2.   One ground of the motion for new trial was: "Because the court erred in refusing to admit in evidence the following testimony of Jim Saul, a witness sworn for the defendant, over the objection of the State that the same was immaterial, to wit: 'I had a conversation with Will Smith [the deceased] about Ella Pride. Me and him come to Blakely one day, and he told me that if Ella Pride did not do him any good she should not do anybody else any good.   I did not tell Charles Pride or Ella Pride what Will Smith said to me.'   The defendant insisted that the said evidence was material as illustrating the state of mind of the deceased toward the defendant, and as corroborative of her theory of the case, viz.; that the deceased had made two or three assaults upon her, that she had threatened to sue out a warrant for him, and was in the act of going to town to take out such warrant when the deceased approached her with a knife for the purpose of preventing her from going, and to commit a felony on her person in pursuance of said purpose."   The language attributed to Will Smith may be construed into a threat, but it was not communicated to the defendant before the homicide, and as there was nothing except the statement of the accused tending to show the deceased to be the assailant at the time of the homicide, the evidence was inadmissible for any purpose. *Nix* v. *State,* 120 *Ga.* 162 (47 S. E. 516).   It was insisted that the evidence was admissible to corroborate the prisoner's statement; but there being no foundation laid for the introduction of uncommunicated threats, it was not admissible for that purpose.

3.   Another ground of the motion for new trial was: "Because the court erred in charging the jury as follows: "To kill a person on account of a past offense or indignity from the person killed, if the killing takes place in anger and resentment of such offense or indignity offered, however grievous such indignity or offense may be, it would be murder. , I charge you it would be unlawful to kill

another in resentment of a past injury.' Movant contends that while this charge is correct as an abstract proposition of law, that it was not adapted to the facts of this case. The only evidence of any past indignity offered by the deceased was that which grew out of the statement of the defendant, and there is nothing in such statement to justify the charge as given, since the defendant contended in her statement that she did not kill the deceased for this past indignity, but because he was attempting to commit a felony on her person to prevent her from suing out a warrant on account of such past indignity, and the charge as given was calculated to impress the jury with the idea that the defendant's defense was that she killed the deceased on account of the previous assaults which he had made upon her." In her statement the defendant told of a past indignity offered by the deceased against her, and stated that in order to procure a warrant against him she had started to town, when, on passing the field in which Will Smith, the deceased, was picking cotton, he attempted to cut her with a knife, and that she fired the fatal shot to prevent the injury about to be inflicted upon her. Having referred to both, it was for the jury to say which was the real cause of the killing. They may not have accepted the prisoner's statement that the homicide was committed to prevent the execution of the assault or through a reasonable fear thereof, but the jury may have attributed the killing to the past wrong. Whatever else may be said of the charge, it was not open to the criticism that it was not adapted to the facts.

4. Other grounds of the motion for new trial related to the charge of the court, and were as follows. "(*a*) Because the court erred in charging the jury as follows: 'In all criminal cases the jury are made the judges of both the law and the facts. The law of which you are to judge, however, is given you in charge by the court, the court being made responsible for giving you in charge the correct law of the case, which law you apply to the facts of the case as you gather them from the mouths of the witnesses, and from that arrive at a correct verdict.' Movant contends that this charge is not a correct statement of the law, and she especially excepts to the following language in such charge: 'the court being made responsible for giving you in charge the correct law of the case,' in that it absolutely deprived the jury of their right to judge the

law, as provided by the constitution, and, as movant contends, exceeded the limit to which the court might properly go in charging the jury upon this proposition. (b) Because the court erred as follows: After charging the jury correctly upon the subject of good character, the court added at the end of such instruction the following: 'However, if the evidence in the case establishes the guilt of the defendant, then proof of good character would afford no good reason why the defendant should not be convicted.' Movant contends that the law is that good character may be considered by the jury in determining whether or not a defendant is guilty, and that the instruction above quoted was susceptible of the construction that the jury could consider proof of good character only independently of and apart from other evidence in the case tending to show guilt or innocence, and that they should first determine from other evidence in the case whether or not the defendant was guilty, and if they found that she was, then they should not consider proof of good character. Movant insists that the effect of this charge was to deprive the defendant of the benefit of the defense of good character. (c) Because the court erred in charging the jury as follows: 'The court charges you further that the defendant enters her trial presumed by the law to be innocent, and this presumption continues and remains with her throughout and until the end of the trial, unless at some progress of the trial the guilt of the defendant is made satisfactorily to appear to the jury beyond a reasonable doubt.' Movant contends that this charge is abstractly incorrect, in that under the law the defendant is entitled to the benefit of the presumption of innocence throughout the entire progress of the trial, and the jury should not reach any conclusion as to the guilt or innocence of the accused until after the evidence is all in, and the charge of the court has been given, and that up to this point the defendant is entitled to have the benefit of the presumption of innocence in her favor in the deliberations of the jury upon the evidence until the case has been closed and given to the jury. The effect of the instruction of the court, as given, is to shift the burden back and forth from the State to the defendant, and from the defendant to the State, throughout the trial, whereas, as movant contends, the law is that the burden is upon the State throughout the entire trial to show the guilt of the accused beyond a reasonable doubt." When taken in connection

with the charge as a whole, the criticisms upon these excerpts do not furnish sufficient cause for the grant of a new trial. The charge was not calculated to mislead the jury or curtail the defendant's rights.

5. The evidence was sufficient to support the verdict, and there was no abuse of discretion in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur.*