### TAYLOR *v.* THE STATE.

1. A continuance will not be granted simply on the asseveration of the accused, without any supportive evidence, that because of public excitement he will not be able to have a fair trial.

2. The grant of a continuance on the ground of the absence of a witness to prove the general good character of the accused rests in the sound discretion of the court, which was not abused in this case.

3. The conduct and utterances of one charged with crime, indicative of a consciousness of guilt, such as an effort to suppress evidence, and the like, are receivable in evidence as incriminatory admissions.

4. It is competent for a witness to give the reasons which actuated him in making a discovery of a relevant fact in the case on trial.

5. It is no ground for the exclusion of a previous contradictory statement made by a witness, that, in laying the foundation, she was asked if she had not made the statement to "Bud" Wilcox, and the impeaching witness is called to the stand by the name of D. J. Wilcox, where all the circumstances indicate a knowledge by the witness, as to whom impeachment is sought, of the identity of the person to whom the alleged statement was made.

6. Where a witness has observed a matter in issue and from the nature of the circumstances he can not adequately state or recite the data so fully and accurately as to put the jury completely in the witness's place and enable them to equally well draw the inference, it is allowable for the witness to give his inference in connection with the facts upon which it is predicated; but if the data can be placed before the jury in such a way that they may draw the inference as well as the witness, then it would be superfluous to add by way of testimony the inference which the jury may well draw for themselves.

7. The possibility or impossibility of identifying a particular person, under the same circumstances and conditions wherein a witness testified that he identified the accused, may be shown by an experiment made by the same witness.

8. Where the evidence affords no inference of any degree of homicide less than murder, and would sustain no other verdict than that of murder or acquittal, and the defendant in his statement to the jury repeatedly refers to the killing of the decedent and mentions having heard the shots fired, and the only defense set up by him, in his statement or in the evidence introduced by him, is that he was not the perpetrator of the crime, it is not error to instruct the jury that if the defendant was the person who killed the deceased under such circumstances he should be convicted.

9. On a trial for murder, where an unlawful killing has been proved, and one of the issues is the identity of the accused as the slayer, evidence of threats by the accused against the deceased may be considered by the jury along with other evidence in determining the identity of the accused as the slayer. *Fulton* v. *State*, 58 *Ga.* 224.

10. An instruction upon the effect of an impeachment of a witness, premised by a statement that one of the modes provided for the impeachment of a witness is by previous contradictory statements, is not rendered errone-

ous by a failure to charge in immediate connection that such previous statements must relate to a material matter and the attention of the witness sought to be impeached must have been called to the time and place of making them. The mode of· impeachment concerns the testimony offered for that purpose; and where the impeaching testimony is material to the issue and' admitted in compliance with the rules of law, the court is not required, at least in the absence of a proper request, to repeat the rule governing the admissibility of such testimony when charging on its effect.

11. The charge on the subject of alibi was in substantial accord with the rule laid down in *Harrison* v. *State*, 83 *Ga.* 130 (9 S. E. 542).

·12. The alleged newly discovered evidence was not of such character as would probably produce a different verdict, even if proper diligence had been shown in ascertaining the witnesses, and their evidence were not cumulative.

13. The evidence was sufficient to authorize the verdict; no error of law was committed; and the discretion of the trial judge in refusing a new trial will not be disturbed.

　　　JANUARY 10, 1911. REHEARING DENIED FEBRUARY 14, 1911.

Indictment for murder. Before Judge Parker. Appling superior court. June 18, 1910.

*W. W. Bennett* and *A. V. Sellers*, for plaintiff in error.

*H. A. Hall*, attorney-general, *J. H. Thomas*, solicitor-general, and *Parker & Highsmith*, contra.

EVANS, P. J. The plaintiff in error, F. T. Taylor, was convicted of the murder of Wade H. Belcher, and sentenced to be hanged. The deceased was assassinated while·traveling along the public road near his home. There was evidence, that, two or three hours before the homicide, the accused quarreled with the deceased at the latter's home and that the deceased ordered the accused from the premises; the accused left, armed himself with a pistol, and came to the shingle-mill of the deceased, inquired for him, using threatening language and vile epithets. Shortly thereafter the deceased came to the mill, tarried a short while, and then left, traveling in a buggy and accompanied by his three-year-old daughter. The accused left the mill and went in the same direction the deceased had gone. Shortly thereafter three reports from a pistol or rifle were heard in the direction where the dead body of the deceased was found, and the accused was seen to jump over a fence a few feet from the scene and run across a·field. The defendant set up an alibi, claiming that at the time of the homicide he was at a place about four hundred yards away from the scene of the killing.

The homicide was alleged to have been committed on August 10th, 1909, and the accused was put on trial at the ensuing September term of the court. When his case was called for trial he made a written motion for continuance, on the grounds that because of public excitement he could not get a fair trial so soon after the time of the alleged homicide (six weeks), and because of the absence of a witness by whom he expected to show his general good character. He alleged no facts or circumstances in his application for continuance suggestive of an inflamed public sentiment, nor did he offer any evidence supportive of this ground of continuance. It appeared from a counter-showing made by the State that the trial occurred in the county of the residence of the accused, and that there was at least one other witness by whom the defendant could establish his character. There was no abuse of discretion in refusing to continue the case on this ground. Compare 9 Cyc. 177; *Salmons* v. *State,* 118 *Ga.* 763 (45 S. E. 611).

Exceptions were taken to several rulings of the court on the admission and exclusion of evidence. One objection was to the testimony of a witness that when he informed the accused of Belcher's death the accused said, "Well, you know how Mr. Belcher has caused lots of trouble, and I can not help it, but I reckon now he will stop," and then asked the witness if he knew anything not to tell it. This testimony was clearly admissible as an incriminatory statement. Exception was also taken to the court's permitting a witness to assign as one of his reasons for particularly observing the imprint of a pistol in the hip-pocket of the accused that he "did not like the expression of his countenance." A potential circumstance in the case was whether the accused was armed with a pistol, and the witness was properly allowed to tell why his attention was directed to the imprint of a pistol in the pocket of the accused.

One witness offered by the defendant to establish his alibi was asked if she had not previously made a contradictory statement as to a material matter at a particular place and time to Bud Wilcox. She denied making the statement; whereupon the State introduced a witness, whose name was given as D. J. Wilcox, to prove that she had made the statement to him. It was objected that the proper foundation had not been laid. We gather from the brief of defendant's counsel that the objection rests upon the failure of the State to prove in terms that D. J. Wilcox was the same indi-

vidual referred to as Bud Wilcox. From the manner in which this testimony came before the jury there can be no doubt that the witness sought to be impeached knew that D. J. Wilcox was the person referred to as Bud Wilcox, to whom it was claimed that she had made a previous contradictory statement. The court refused to allow a witness to give his opinion that the defendant would have had sufficient time to go to the place where he claimed to have been before the witness heard the pistol shots, but did allow a witness to testify, after describing the relative positions of the parties, the character of the place and its freedom from obstructions, that a person could be seen going from one place to another in the field from a particular view point. There was no error in these rulings. *Pride* v. *State,* 133 *Ga.* 438 (66 S. E. 259). The witness who identified the accused as the person running from the place of the homicide just after the pistol was fired, and the attorney of the defendant, were together at the scene of the homicide before the trial. He was allowed to testify that on that occasion he identified a man, in the presence of the defendant's counsel, occupying the same relative position to the witness as did the accused when the witness saw him. The objection was that this testimony was irrelevant. There was no point made that the conditions at the time of the experiment were in any wise dissimilar to those prevailing at the time the witness testified he recognized the accused. The possibility or impossibility of identifying a particular person under the same circumstances may be shown by experiment. 5 Enc. Ev. 488. The evidence was not open to the objection urged against its admissibility.

There were also many objections taken to the charge of the court, several of which related to the allusion of the court that Belcher had been killed as amounting to an expression of opinion that an unlawful homicide had been established by the evidence. It is true that under our system of jurisprudence the judge is forbidden to express an opinion as to whether any particlar fact has been proved; yet, where the evidence to establish such fact is undisputed, and the fact is admitted by the accused on the trial, it is not necessarily error for the court to assume such fact in formulating appropriate instructions to the jury. The only inference deducible from the evidence was that the homicide was an assassination, and the defendant in his statement several times referred to the killing of Mr.

Belcher. Where the evidence affords no indication of any degree of homicide less than murder, and would sustain no verdict other than that of murder or an acquittal, and the only defense set up by the defendant is that he was not the perpetrator, it is not error to instruct the jury that murder is the only grade of homicide involved in the case, and if the defendant was the man who killed the deceased under such circumstances he should be convicted. *Sanders* v. *State*, 113 *Ga.* 267 (38 S. E. 841) ; *Jones* v. *State*, 130 *Ga.* 274, 286 (60 S. E. 840). There are other criticisms upon the charge, but we do not think they are meritorious, or require further notice than an enunciation of the rulings thereon which appear in the headnotes.

On the hearing of the motion for new trial the court heard testimony as to the existence of newly discovered evidence. Even if the evidence was not cumulative, and proper diligence to discover it prior to the trial was shown, its character was not such as would probably produce a different result.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*