## 7893.   BENNETT v. THE STATE.

1. In a prosecution for homicide, where the evidence for the State makes a case of murder, and the evidence for the defendant, including his statement to the court and jury, a case of self-defense, and where neither the evidence nor his statement tends to show that he provoked the difficulty and brought upon himself the necessity to kill the deceased, it is error to charge the jury as follows: "To constitute justifiable homicide, the slayer must not have brought upon himself the necessity to kill the deceased. If a person provoke a difficulty by his own fault and bring upon himself the necessity to kill another person, such killing would not be justifiable homicide. If one provokes a difficulty and makes no effort to decline it, but kills his adversary in the contest, it is not justifiable homicide."

2. The last sentence in the charge quoted in the foregoing headnote, to wit, "if one provokes a difficulty and makes no effort to decline it, but kills his adversary in the contest, it is not justifiable homicide," considered in connection with the context, is not error, and would not in this case require the grant of a new trial if there were evidence to warrant the whole charge upon this subject, a portion only of which is quoted in the first headnote. In a proper case the sentence here quoted should be qualified by a further statement to the effect that if a person provokes a difficulty and the provocation amounts to no more than a mere trespass, it would not put him in the wrong in resisting or defending himself against a felonious attack on account of such provocation.

3. Except as indicated above, the trial was free from error.

DECIDED MARCH 13, 1917.

Conviction of manslaughter; from Montgomery superior court—Judge Graham.   September 16, 1916.

*J. B. Geiger, A. C. Saffold, Eschol Graham,* for plaintiff in error.
*W. A. Wooten, solicitor-general,* contra.

GEORGE, J.   The plaintiff in error was indicted for the offense of murder, and was found guilty of voluntary manslaughter.   The case is before this court on exceptions to a judgment denying a motion for a new trial.   The killing was the result of a dispute over the possession of a cow and a calf claimed both by the deceased and by his daughter, the wife of the defendant.   The deceased went to the home of the defendant for the purpose of carrying away the cow and calf.   The wife of the defendant protested, and an altercation ensued, during which the defendant shot and killed the deceased.   The evidence for the State shows a killing without legal justification, while the evidence for the defendant is to the effect that the cow and calf were being taken by force, against the consent of the wife of the defendant, and that at the

time of the homicide the deceased was attempting to kill the defendant by shooting him with a pistol. On this point the evidence for the State is in sharp conflict with the evidence for the defendant and the defendant's statement. Considering the testimony for the State, if the defendant provoked the difficulty resulting in the homicide, he immediately followed the provocation given by taking the life of the deceased; the deceased made no effort whatever to resent any provocation offered him by the defendant, and under no view of the State's case was there any necessity for the killing by the defendant. On this point the evidence of the only eye-witness introduced by the State is as follows: "I told David John [the defendant] two or three times to put the gun down, and he threw the gun up on me and said, 'You take another step, damn you, I'll shoot you.' I didn't have a thing in the world in my hand at that time. David John made about two more steps toward me and I told him to stop. Mr. Fountain [the deceased] stopped, and by the time he turned to him that way David John shot him. . . Mr. Fountain was not doing a thing when David John shot him, and didn't have anything in his hand but the whip he was driving the cows with. Mr. Fountain never said anything to David John before David John shot him. David John was about fifteen or twenty steps from Mr. Fountain when he shot him." Considering the evidence for the defendant, together with his statement, he provoked no difficulty whatever; the deceased persisted in carrying away the cow and calf; the defendant's wife called for the gun for the purpose of killing the cow, in order to prevent her father from carrying it away; the defendant did not wish his wife to have the gun, and picked it up himself. As to what occurred after he picked up the gun, one of the witnesses sworn in his behalf (whose evidence fairly illustrates the whole of the testimony in his behalf upon the point) testified as follows: "He commenced backing from Mr. Sharpe [the witness for the State], and Mr. Sharpe was going on after David John with his knife in his hand. . . I didn't understand anything that was said between Mr. Sharpe and David John. David John went clear around the cowpen to the fence before he stopped, and I didn't hear him say anything to Mr. Sharpe until he stopped, and then he said to Mr. Sharpe not to come any further or put his hands on him, if he did he would kill him. At this time Mr. Fountain was

on the outside of the fence and outside of the field, right even with them. . . When David John told Mr. Sharpe to stop and not to put his hands on him, if he hid he would kill him, Mr. Fountain said, 'Get out of the way, I'll fix the God damn son of a bitch,' and Mr. Fountain threw up his pistol with both hands this way (indicating), and then David John shot him. David John swung the gun around before he shot. As soon as Mr. Fountain spoke and cursed, the gun fired, and I thought all of them shot. I thought Mr. Fountain shot too." On this point the defendant's statement at the trial was as follows: "I said, 'Mr. Sharpe, if you come any further with that knife I will kill you.' . . I heard a stick break—seemed like it was right behind me. Just as I spoke to Mr. Sharpe Mr. Fountain said: 'Move out of the way. I'll fix the God damn son of a bitch.' As I looked around he was presenting a pistol. Looked like I could have stuck my finger down the barrel of it. I was scared. . . I knew that Mr. Fountain would kill me. . . I threw my eyes on him and pulled the gun that way."

1. From the foregoing it is apparent that the only difficulty provoked, from the standpoint of the State, was the difficulty commenced by the defendant, and which culminated in the unlawful killing of the deceased at a time when the deceased was offering absolutely no resistance to the defendant. From the standpoint of the defendant he was acting, throughout the transaction, in self-defense. The charge quoted above in the first headnote is wholly unwarranted by the facts in the case. Though abstractly correct, a charge not warranted by the evidence should not be given; and this particular charge was harmful to the defendant, under the facts of the case. *Teasley* v. *State,* 104 *Ga.* 738-742 (30 S. E. 938); *Rooks* v. *State,* 119 *Ga.* 431 (46 S. E. 631); *Strickland* v. *State,* 8 *Ga. App.* 421 (4), 423 (69 S. E. 313).

2. As stated above, the sentence from the charge of the court quoted in the second headnote, considered as an abstract proposition, was not error in this case. Generally, if one provoke a difficulty, he does not thereby necessarily lose the right to defend himself. "Where a battery with a weapon likely to produce death was being committed by the deceased upon the slayer when the mortal blow was given, the fact that he provoked the battery by the use of opprobrious words would not put the slayer in the wrong for

resisting it so far as was necessary to his defense." *Boatright* v. *State*, 89 *Ga.* 140 (15 S. E. 21). "One who provokes a difficulty may yet defend himself against violence on the part of the one provoked, if the violence be disproportionate to the seriousness of the provocation or greater in degree than the law recognizes as justifiable under the circumstances." *Sams* v. *State*, 124 *Ga.* 25 (52 S. E. 18). In the case last cited it was said: "Undoubtedly, if one provoke a difficulty, and the person provoked resent the affront offered in such a manner and to such an extent as the law recognizes as reasonable and justifiable, the other party to the difficulty will not be justified in repelling by force an assault for which he was directly responsible. Thus, if A draw a knife and advance in a threatening manner upon B, the fact that B, upon such provocation, drew a pistol and fired upon A would not justify A in killing or wounding B. But if the resentment of the party provoked is disproportionate to the seriousness of the provocation, the same rule would not apply. It must be such resentment as a reasonable man would indulge; and if it surpass that the other party, even though he may have provoked the difficulty, would have the right to defend himself against threatened injury." The language used by the trial judge both preceding and following the sentence from the charge quoted in the headnote states an abstractly correct principle of law. However, for the reasons stated in the first part of this opinion, we do not think that the giving of this abstract principle to the jury was authorized by any of the evidence, or by the defendant's statement.

3. Since this case must be retried, we have carefully examined the other assignments of error. None of them are meritorious. It is true that the trial judge, in charging section 72 of the Penal Code of 1910, instructed the jury that the "serious injury" referred to in that section meant a felony. This, under the decision in *Freeney* v. *State,* 129 *Ga.* 759 (4), 766 (59 S. E. 788), was error. The able trial judge, in overruling the motion for a new trial, admits his error. We agree with him, however, that, under the facts of this case, the error was entirely harmless. Indeed, the opinion in the *Freeney* case recognizes that the "serious injury" must be grave in its character and consequences. The decision in *Nix* v. *State,* 120 *Ga.* 162 (47 S. E. 516), is authority for the proposition that "a case might arise where a trespass upon property

would be of such a grave nature as to amount to a serious injury within the meaning of this section [§ 72]; in other words, that a trespass in its nature, gravity, and consequences would be such that the law might authorize the taking of human life to prevent its commission. But such a condition of affairs would be of rare occurrence in the transaction of human affairs, and certainly would not arise out of one of the ordinary and every-day quarrels about property rights." The record in this case discloses an ordinary and every-day quarrel about property rights, and, moreover, about the rights of members of the same family. In the *Crawford* case, 90 *Ga.* 710, the words "serious injury," in section 72 of the Penal Code, are declared to have "no application where the property attacked or invaded is so inconsiderable that the injury intended is not serious but slight." To the same effect is *Pound* v. *State*, 43 *Ga.* 88 (4, 5), where it is pointed out that the property on which the personal injury was intended or might accrue must be at the dwelling; "the household goods so to speak are regarded with peculiar sanctity in the protection of the law." This dictum is doubted in the *Crawford* case, supra, but is expressly approved in the *Freeney* case, supra. The serious personal injury referred to in this section of the code must be an injury which in its nature, character, or effect "is traveling to a felony." A killing to prevent a taking of slight moment or importance can not be justified, though the taking may technically amount to robbery. When the specific defense relied upon by the defendant in the case at bar is considered, the charge of the court was as favorable to him as the facts warranted. For the reasons stated in the opinion, the court erred in overruling the motion for a new trial.

*Judgment reversed. Wade, C. J., and Luke, J., concur.*