### · 9173.   ELLISON *v.* THE STATE.

1. "In order for the exclusion of oral testimony to be considered as a ground for a new trial, it must appear that a pertinent question was asked, and that the court ruled out the answer; and that a statement was made to the court at the time, showing what the answer would be; and that such testimony was material, and would have benefited the complaining party."

2. On the trial of one charged with murder, where it was not shown, otherwise than by the statement of the accused, that the deceased was the assailant in the fatal encounter, it was not erroneous to refuse a new trial upon newly discovered evidence of threats made by the deceased against the accused, which were not communicated to the accused prior to the homicide.

3. The evidence authorized the verdict of voluntary manslaughter.

DECIDED NOVEMBER 13, 1917.

Indictment for murder; conviction of manslaughter; from Talbot superior court—Judge Howard. August 4, 1917.

Charles Ellison was indicted for the murder of his brother, Richard Ellison. It appears, from the evidence, that on the night of the homicide they went to a frolic at the home of Frank Ellison, their kinsman; that the deceased left the frolic before the defendant did, and went to the defendant's home, where the defendant's wife was alone; and that the defendant shortly afterward also went to his home. The next time the defendant was seen he reappeared at the frolic with a shot-gun in his hand, stated to the crowd there that he had killed Richard, and said that some one had better go and see about it. A certain witness who was also at this

frolic and gone from it to the defendant's home, and there found the body of Richard Ellison on the floor before the hearth, with a shot-gun wound in the breast, and found no one in the room but the defendant's wife, but on his return with a doctor, an hour later, he found the defendant in the room. He did not find any ax in the room or elsewhere. The defendant, in his statement on the trial, asserted that his brother Richard "had been kinder running over him about his wife;" on a former occasion, when he found Richard at his house, Richard drew a knife on him and put the knife around his throat, and he told Richard to leave and not come back any more; that on the night of the homicide, when he returned from the party, Richard was on the outside of his house; that he (the defendant) went into the house and shut the door, and Richard got the ax, which was on the outside of the porch, and told him to open the door; that, upon his refusal to do so, Richard bulged against the door, broke the door down, and came in with the ax drawn back on his shoulder; that he (the defendant) then reached up in the rack, got his gun, and told Richard to get back; that Richard continued to advance on him, and he fired, not intending to kill, but intending only to prevent Richard from hurting him. In rebuttal of this statement the State produced a witness who testified that the defendant, after the killing, gave him an entirely different account of the homicide, claiming that it was accidental. The jury found the defendant guilty of voluntary manslaughter, and to the overruling of his motion for a new trial he excepted.

*J. H. McGehee, B. Culpepper,* for plaintiff in error.

*C. F. McLaughlin, solicitor-general,* contra.

HARWELL, J. (After stating the foregoing facts.)

1. The motion for a new trial complains of the refusal of the court to allow a witness for the State to answer the following question, propounded to him on cross-examination by the defendant's counsel: "At the time Charles Ellison (the defendant) said he had shot Richard, why did he say he had shot him?" The ground of complaint is that, the State having proved by the witness an admission, the defendant was entitled to have the witness give the entire admission and to let it go to the jury in its entirety. Unquestionably, when a confession is given in evidence, it is the right of the defendant to have the whole confession and all the conver-

sation connected therewith. Penal Code (1910), § 1030; *Cox* v. *State,* 64 *Ga.* 375, 414 (37 Am. R. 76), and citations. And it has been held reversible error on the part of the trial judge to admit a part of a defendant's confession, and exclude the other part. *Long* v. *State,* 22 *Ga.* 40 (1). However, it is equally well established that, "in order for the exclusion of oral testimony to be considered as a ground for a new trial, it must appear that a pertinent question was asked, and that the court ruled out the answer; and that a statement was made to the court at the time, showing what the answer would be; and that such testimony was material, and would have benefited the complaining party." *Griffin* v. *Henderson,* 117 *Ga.* 382 (2) (43 S. E. 712); *McAllister* v. *State,* 7 *Ga. App.* 541 (4) (67 S. E. 221). In this case it does not appear what answer the witness would have given to this question. It does not appear that the answer of the witness would have shown that the defendant, when he confessed that he killed the deceased, gave any reason at all for killing him. It does not appear whether, had his statement as to his reason for killing his brother, if made, been admitted, it would have benefited or injured the defendant. This is especially true in view of the fact that it was proved that the defendant made contradictory statements as to his reason for the killing. We are not able to determine whether the answer of this witness would have shown that the defendant, at the time of his confession, gave a reason for the killing which was consistent with his statement on the trial, or would have given still another reason, inconsistent therewith. Hence, we are unable to say that the court committed harmful error in refusing to allow the witness to answer the question propounded to him.

2. One of the grounds of the motion for a new trial is based upon newly discovered evidence of threats made by deceased against the accused prior to the fatal encounter. The deceased had been overheard to remark that, should the defendant "run up on him" when the deceased was having improper relations with the defendant's wife, he (the deceased) would "take a chair or something else and kill him." This threat was uncommunicated to the defendant prior to the homicide. It will be seen that there is no evidence of an assault made on accused by the deceased. The evidence for the State makes out a case of killing without justification. It is only in the defendant's statement

that the theory of mutual combat or self-defense arises. Hence the uncommunicated threats made by the deceased would not, under several decisions of the Supreme Court, have been admissible in evidence on the trial of the case, and therefore, when discovered after trial, are not ground for a new trial. See *Vaughn* v. *State,* 88 *Ga.* 731 (16 S. E. 64); *Peterson* v. *State,* 50 *Ga.* 142; *Nix* v. *State,* 120 *Ga.* 162 (47 S. E. 516); *Pride* v. *State,* 133 *Ga.* 438 (2) (66 S. E. 259).

3. ·The two grounds dealt with above are the only grounds of the motion for a new trial other than the general grounds that the verdict was contrary to the evidence, etc. The evidence authorized the verdict.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*