## ANDERSON vs. THE STATE OF GEORGIA.

1. The showing in support of a motion for continuance,•on the ground of the absence of witnesses, should be full, satisfactory and direct, as to the material allegations necessary for that purpose; it should appear that there is no other witness present by whom the defendant can satisfactorily prove the same facts, and that such facts would be evidence in the case.

(a.) Continuances of a criminal case, after the first term, rest in the sound discretion of the court; and even at the first term, all discretion is not denied to the judge.

2. The bill of exceptions should specify plainly the decision complained of. An assignment of error that the entire charge is erroneous, is too general, if any part of it be correct.

(a.) While confessions of guilt should be received with great caution, and will not, alone, justify a conviction, yet if they should be corroborated by circumstances, they would be sufficient for that purpose.

(b.) The charge on the subject of circumstantial evidence and confessions was full, clear and proper.

3. Where the preliminary examination as to the admissibility of confessions was conducted in the presence of the jury, and being found competent, they were admitted, this was not such error as would require a new trial; aliter, had the confessions been inadmissible.

January 8, 1884.

Criminal Law. Continuance. Murder. Practice in Superior Court. Before Judge ADAMS. McIntosh Superior Court. May Term, 1883.

To the report contained in the decision, it is only necessary to add, in connection with the third division thereof, that one ground of the motion for new trial was because the court did not cause the jury to retire during the preliminary examination as to the admissibility of the confession. After examining the witness, McGriff, the confessions were held admissible, and were proved, as stated in the decision.

GARRARD, MELDRIM & FRASER, for plaintiff in error.

C. ANDERSON, attorney general; W. G. CHARLTON, solici-
tor general, by HARRISON & PEEPLES, for the state.

HALL, Justice.

The prisoner and his brother, Pompey Anderson, were
indicted jointly for the murder of Chance Brown. When
the case was called, the defendants severed, and the pris-
oner was put upon his trial. He moved for a continuance,
and put his showing in writing, to the effect that Barbara
Anderson, and other witnesses subpœnaed for them, were
absent without his consent, etc., on account of sickness ;
that he expected to prove by them that Pompey Ander-
son was absent from the scene of the homicide at the time
it was committed, and could not have participated therein.
This showing for a continuance was overruled, and the
trial proceeded. The defendant was convicted, and made
a motion for a new trial upon various grounds, which was
overruled by the court. In this motion was included the
judgment overruling the continuance. The evidence upon
which the defendant was convicted consisted principally
of his own confessions, made to one McGriff, who was
confined in McIntosh jail at the time defendant was com-
mitted, and who thereafter occupied with him the same
cell in the prison. Defendant stated to McGriff that he
" would not be there, if it were not for his brother; that
Chance had detected Pompey killing his hog, and that
Pompey had come to him (Robert) and advised him of
the fact, saying they must put an end to Chance; that
he (Robert) had then, at Pompey's instance, gone to
Chance's house, and asked him if it was true he had said
Pompey had stolen his hog. Chance said he had. That
he then asked him if he would show him the place where
he caught Pompey, and Chance assenting, they thereupon
walked to the spot together, Pompey, by arrangement,
being stationed there with his gun ; that on reaching the
spot, he (Robert) struck Chance on the forehead with

his stick, and Pompey shot him in the head from behind; that they then concluded, from the fact that Patsy had seen Chance and Robert go off together, that they were in a bad fix, and to secure themselves, it was necessary to kill the woman; whereupon it was agreed that Pompey, having killed Chance, Robert should kill Patsy, his wife. In pursuance of this arrangement, they proceeded to Chance's house, and Robert, inserting the gun through a crack, shot her as she sat by the fire.

1. There was no error in disallowing the motion for a continuance, or in refusing a new trial upon that ground. The presiding judge seems to have thought that sufficient diligence had not been shown in procuring the attendance of these absent witnesses, for, in certifying this ground of the motion, he states that the case was sounded some days previous to the trial, with the object, which he then announced, of ascertaining whether everything was in readiness, and, if parties so desired, of having witnesses sent for; that the defendant and his counsel, although present, gave the court no intimation of the absent witnesses, but permitted the case to be marked ready, the court acting under the idea that the defendant was prepared for trial. Whether the court was right or wrong in supposing that there was a want of diligence in procuring the attendance of these witnesses, yet we are well satisfied that the case should not have been postponed because of heir absence.

The absence of Pompey Anderson from the scene of this double murder, at the time it was committed, did not account for the prisoner's whereabouts, and did not negative the fact that he made to McGriff the full and circumstantial confession deposed to by him, and, if admissible at all, could have had only a remote bearing upon that issue. The showing did not set forth that the defendant had no other witnesses by whom he could prove the same facts, nor could this requirement of the law have been complied with, as the prisoner, on his trial, introduced at least three other witnesses who testified to substantially the same

facts.   In *Allen vs. The State.* 1C *Ga.* 85, this court held,
that the affidavit for a continuance should be full, satis-
factory and direct as to the material allegations necessary
for that purpose, and should state that there is no other
witness present by whom the party can satisfactorily
prove the same facts.   It should appear, further, that the
facts expected to be proved would be evidence in the case.

This indictment was found at the May term, 1881: the
trial did not take place until the May term, 1883, of the
court.   By the Code, §4647, every indictment stands for
trial at the term of the court at which it is found, unless
the absence of material witnesses or the principles of just-
ice should require a postponement of the trial; then the
court is required to allow such postponement to the next
term.   Subsequent continuances would seem to rest in the
sound discretion of the court.   *Griffin vs. The State,* 26 *Ga.,*
498, 500.

The court, in the first case, is required to grant the contin-
uance for the specified cause; in the last case, however, it
has " power " to do so.   But, although required to grant
the continuance for the absence of material witnesses at
the term when the indictment is found, the judge is not
even then deprived of all discretion in the matter, as ap-
pears to have been ruled in *Malone's* case, 49 *Ga.,* 215.

It was urged by the prisoner's counsel in this case, that
the witnesses sworn accounted for the absence of Pompey
Anderson from the place of the homicide only for a por-
tion of the time covered by the transaction, and that the
absent witnesses, if present, would have made complete
proof of the *alibi* as to him.   This is not apparent from
the statement made in the showing for a continuance ; and
from what is developed in the evidence on the trial, it
seems highly improbable that any satisfactory account
could have been given of him by these witnesses during
that alleged interval; for it appears that during all the
time these witnesses were in company with some of the
witnesses who were actually sworn on the trial.   When

the motion for a new trial was made, these absent witnesses were accessible; their affidavits could have been obtained and made a part of the motion, and if the prisoner had suffered injustice or oppression for the want of this evidence, the fact could, in that way, have been made to appear. But no attempt was made to procure their affidavits, and their absence is a potent fact, justifying the conclusion that the witnesses could not have satisfactorily accounted for Pompey during the interval in question. We can perceive no abuse of the discretion of the court in overruling this motion for a continuance, and will not undertake to control its exercise, unless it has been abused, or has resulted in oppression to the accused. This is the well settled rule of the court. Code, §3531, and cases cited thereunder.

2. The 2d and 3rd grounds of the motion for a new trial, and the first ground of the amended motion, relate to the same subject, and may be considered together.

They assert that the verdict is contrary to law and evidence, and without evidence to support it, and that the entire charge of the court, which is set out at length, is erroneous. There is no assignment of error upon any portion of this charge, save the sweeping one above stated. This practice has never been sanctioned by this court. We could not do it, if we would, for the law requires that "the bill of exceptions shall specify plainly the decision complained of, and the alleged error." It is unnecessary to cite the numerous cases on this point; they are uniform, and we fail to find one that departs, even remotely, from the long and well-established rule, which is co-eval with the court itself.

It was frankly admitted by the able counsel for the prisoner that, if his confession was to be credited, by being sufficiently corroborated, and if it was uncontradicted in other respects and by other testimony, then the verdict of the jury was sustained by the evidence. Notwithstanding the view presented by them with so much earnestness

and plausibility, we are constrained to say, that a confession so clear, positive, direct and circumstantial, and one so fully corroborated by the independent facts and circumstances attending the homicide, as proved by other witnesses, has rarely come under our observation. To quote the words of the solicitor general, "it gave the motive, the manner, the results, and the precautionary efforts to conceal the crime, with circumstantial, plausible and reasonable detail." Pompey, it seems from this confession, was apprehended in stealing the hog he had killed, and which belonged to deceased. By other testimony, it appeared that, at the house of the latter, in his ox-cart, in which he had that day been to Darien, and in which he was seen on his return to his home, this ox, still fastened to the cart, was found hitched to the fence before his door, and in the cart was a dead hog, killed by a gun-shot wound, and having its ears cut off. This mutilation, it is reasonable to suppose, no one but a thief could have any adequate motive for making. The dead man's body was found in the woods, a short distance from his own house, and also from the house of prisoner. When it was found, he was lying on his face with a gun-shot wound in the back of his head, given at such short range that the hair was singed, and that the buckshot entered his head in a lump, making a single broad and ghastly wound, and on his forehead was a gash a half inch deep and from two to two and a half inches long. Inside the house, Patsy, his wife, was found on the floor dead, with a gun-shot wound in her head. These are a few of the prominent facts in the case, proved by other witnesses than the one who gave evidence of the confession. Now, compare these facts, and others of a more minute and less prominent character, as testified to by independent witnesses, with the confession as detailed, and bear in mind that the witness speaking of the confession was a stranger at the place, and had no knowledge of the locality, nor of the persons engaged, and could have known nothing of the circumstances attending this awful tragedy, and we think little room

is left to question the propriety of this conviction. The recommendation that the defendant be imprisoned for life in the penitentiary, was a high tribute to the skill and ability of the counsel who defended him. According to the confession, the first blow was struck by prisoner on the forehead with a stick; according to the other witnesses, the prisoner was the owner of the stick, which he habitually carried, and which was shown at the inquest, having a freshly made crack in it, and on it a dark spot. The deceased, as has been seen, had on his forehead such a wound as would be made by such a stick. From the effect on the stick, and the character of the wound on the forehead, the blow must have been given with great force; it was, at least, sufficiently heavy to fell the deceased.

The confession stated that the gun-shot wound was given last, and at short range. This is evidently true, since the entire load of buckshot entered at a single aperture, and the hair on the scalp at the spot it entered was burned. The position of the dead man, lying on his face, indicates that the wound which finished him must have been given after he was knocked down.

The confession states, that after the murder, it was suggested that the wife of the dead man would be a witness against them, and to prevent this, prisoner had slain her. This is strongly corroborated by the fact that she was found dead in her house, with a gun-shot wound in her head, indicating clearly that she had been assassinated for the reason given, and in the manner stated by the confession.

The various particulars in which this confession has been substantiated by other evidence, show the strong improbability of its having been fabricated by the witness, McGriff. Considering his absence at the time, and the fact that he was entirely unacquainted with the parties and the locality; knew nothing of their relation to each other, and was an utter stranger in the neighborhood, his narrative shows ingenuity truly wonderful, and no mean knowledge of the requirements of criminal law. This witness was an un-

lettered and ignorant colored raft-hand, and could not, as it seems to us, have been instructed in details so minute and important, otherwise than he stated.

Now, how was this damaging evidence met? The defence attempted to show that he was present at the coroner's inquest, where he obtained a knowledge of these circumstances; this he emphatically denied. The evidence introduced to disprove this denial, is, to say the least of it, highly improbable, if it was not successfully impeached; at all events, there was a conflict of evidence upon this point, and the jury, after weighing the evidence, chose to believe the state's witness. This was their undoubted privilege, and the judge who tried the case, upon a review of all the facts on the motion for a new trial, was satisfied with the conclusion to which they came, and so far from abusing the sound legal discretion with which he is wisely invested, we concur in opinion with him, that the verdict should stand. We think, as we have before intimated, that the conviction was proper.

There is not a doubt that the *corpus delicti* was established. Murder most foul was evidently committed; the only question to be decided was as to the perpetrator. The prisoner declared that he and another were the guilty agents. Was his voluntary confession to be credited? While it is true that confessions of guilt are to be received with great caution, and that they will not alone justify a conviction (Code, §3792), yet, if they should be corroborated by circumstances, they would be sufficient for that purpose. 45 *Ga.*, 53; 65 *Id.*, 152; 63 *Id.*, 339.

The charge given in this case upon the subject of circumstantial evidence and confessions, distinguishing between the two, and as to the amount of evidence required to convict in such cases, was clear, explicit and proper; it was just what it should have been. This much we say in response to the criticisms made upon it in argument. The inability of the defendant's learned counsel to point out

specifically the errors alleged to be contained in it, is its best vindication.

3. There was no error in conducting the preliminary examination as to the admissibility of confessions in the presence of the jury, inasmuch as the testimony was found to be competent and was admitted. This would have been error had it been rejected. *Hall vs. The State*, 65 *Ga.*, 36; *Jones vs. State*, *Id.*, 506.

Judgment affirmed.