30665. McKENZIE *v.* THE STATE.

DECIDED MARCH 8, 1945. REHEARING DENIED MARCH 26, 1945.

*Willis Smith, Judson Andrews, E. A. Wright,* for plaintiff in error.

*John A. Boykin, solicitor-general, Reuben A. Garland, Durwood T. Pye,* contra.

PER CURIAM. The defendant was convicted of sodomy. In the first special ground of the motion for new trial he contends that "the court erred in the trial of said case, and during the trial of the same, in refusing to continue the case for a reasonable length of time on account of the absence of his leading counsel, Willis Smith, the following motion having been made: Mr. Andrews [assistant counsel for the defendant] : 'If the court please, I wish to make a motion to continue the case because Mr. Smith, who is leading counsel in the case, has been injured in an automobile accident and is not able to appear.' Wilbur McKenzie, called as a witness in regard to the motion, testified (direct examination) : 'My name is Wilbur McKenzie. I am the father of the defendant on trial, W. O. McKenzie. I employed an attorney to defend my son in this case, Col. Willis Smith of Carrollton. He was in court yesterday, and I have not seen him since, and I am informed that he was injured on the way home. I have not discussed the case with you, Mr. Andrews.' (cross-examination) : 'I was ready to go on trial yesterday. I was informed that he was injured in a wreck. He is not present here this morning.' Mr. Andrews: 'I would like to add that I have not talked to a single witness in this case, and I have only been employed as associate counsel. All I know about Mr. Smith's condition is what I was told by a young lady in his office in Carrollton, that he would not be able to come to court to-day on account of an accident that he had going home.' The court: 'The court will have to hold that you have not made a sufficient showing with reference to Mr. Smith's illness. Is there any other evidence?' Mr. Andrews: 'No, sir.' The court: 'The motion is overruled and the case shall go on trial.' Mr. Andrews: 'If the court please, I would like to make an additional motion. The motion is for delay that I may get some evidence from the government in regard to this man's mental condition. I have no evidence to present to the court as to his mental condition, and I want to get a record in regard to his insanity. I would like to prove that, if the evidence is available, and present it at this time.' Wilbur McKenzie recalled (direct examination) : 'I just could not say whether Mr. Smith has some records from the government showing the mental condition of this boy—he has a record of his discharge from the army, but I don't know what other records he has.' Mr. Garland: 'If the court please, we object to

that as irrelevant and immaterial.' (The matter was then discussed at some length.) Mr. Andrews: 'If the court please I would like to be sworn and make a statement.' The court: 'Very well.' Judson Andrews being sworn testified as follows: 'If the court please, Mr. Smith had in his records on yesterday a certified copy of the records of the ordinary's court of Carroll County as to the mental condition of this party, and I have not got any evidence in hand this morning. He also had a certified copy of the discharge from the army of the defendant, as to that I could not state as to its admissibility or whether it is proof of his mental condition.' The court: 'I will overrule the motion and let the case proceed. I want to make a statement as to what happened yesterday morning in connection with this matter. The case was called for trial on Monday, June 19th. Mr. Smith of Carrollton made a motion that the case be not called for trial on that day, and the State made a motion that the case be set down for Tuesday. Mr. Smith also requested that the case be set down for Wednesday instead of Tuesday. The case was set down for Tuesday apparently with the acquiescence of Mr. Smith. The court is now of the opinion, in so far as the motion for continuance on account of Mr. W. O. McKenzie's (defendant's) condition, is not now pending. I have heard the motion for the defense at the present time in reference to absence of counsel for the defendant and I have overruled the motion.' The affidavit of Willis Smith, counsel for defendant, now movant, is hereto attached and made a ground of the amended motion for a new trial, together with the affidavit of Miss Lillian Teal, his secretary. Said affidavits being marked 'Exhibit A' and 'B' respectively, and made a part of this motion for a new trial; and movant contends that the court committed reversible error, and the same was harmful to the defendant, now movant, in not continuing the case for a reasonable length of time until his leading counsel, the only counsel who had conferred with any of the witnesses in the case, or who had made preparations in the trial of the case, to recover from his illness. The alleged offense having been committed on the first day of June, 1944, and the defendant indicted on June 2, 1944, the case set down for trial on the 19th day of June, 1944, and the case had not been continued by the defendant or his counsel, except that the judge had continued it from Monday, June 19th, to Tuesday, June 20th, and

movant insists that it was error, harmful and prejudicial, not to continue the case for a reasonable length of time, or even a few days until his leading counsel could have been present to conduct the trial of said case; and the refusal to continue the case and to force him to trial without his leading counsel, but with an attorney who knew absolutely nothing about the case, was harmful and injurious to him, and as movant insists was reversible error. It was further error to refuse to continue the case for a reasonable length of time for the reason that the leading counsel for the defendant had in his possession a certified copy of the court of ordinary adjudicating the defendant insane, and there was no way for Mr. Andrews, the associate counsel, to obtain this evidence and present it to the court and jury." The affidavit of leading counsel, Willis Smith, referred to as being attached to this special ground of the motion for new trial, omitting the formal parts, is as follows: "Affiant says that on or about the 14th or 15th day of June, 1944, he was employed by the father of the defendant to represent the defendant in Fulton superior court. That he had prepared the case for trial personally the best he could for the short length of time he had. That on June 19th he went to Atlanta when the case was assigned for trial before Judge Hooper. That he had a showing for continuance on the ground that the defendant was insane, as was shown by the affidavits of two doctors. Said affidavits are hereto referred to and made a part of this affidavit. At the time, the defendant was not present but was at Carrollton, Georgia, under bond. The showing for continuance was overruled by the court, and the case checked for the following day, June 20th. Affiant requested the court to check it until the 21st day of June, which was refused. Affiant further says that he returned home on the afternoon of the 19th and became ill that night. That the next morning of June 20th he was still ill, but started to Atlanta in his automobile alone. After going a few miles that he grew much worse and had to return home. When he got home he found that Dr. Scales and Dr. Reese, witnesses for the defendant, and the defendant's father, had already gone to Atlanta and he had no way, or time, to get a certificate of a doctor or to send a certificate to Atlanta, and that he requested his secretary, Miss Lillian Teal, to call the judge, Mr. Hooper, or Mr. Andrews, whom he had associated in the case, and request them to continue the case for a day

or so until he recovered sufficiently to try the case." The affidavit of Miss Lillian Teal, omitting the formal parts, stated, "that on the morning of June 20th, Willis Smith called her over the 'phone and requested her to call Judge Hooper or Mr. Judson Andrews and inform him he was ill and unable to go to Atlanta and attend court that day, and requested him to check the case for a day or two, or until he had recovered sufficiently to try the case. Affiant says that she called Mr. Judson Andrews, and told him this."

"A showing for a continuance on the ground of the absence and illness of leading counsel is not complete, under section 3525 [81-1413] of the Code, without a statement on oath that the application is not made for delay only." *Burnett* v. *State,* 87 *Ga.* 622 (13 S. E. 552). "A showing for a continuance upon the ground of the absence of a witness, is insufficient if it omits to state that the application is not made for the purpose of delay." *Newsome* v. *State,* 61 *Ga.* 481. In the language of the trial judge, "the case was called for trial on Monday, June 19, 1944. Mr. Smith of Carrollton made a motion that the case be not called for trial on that day and the State made a motion that the case be set down for Tuesday. Mr. Smith also requested that the case be set down for Wednesday instead of Tuesday. The case was set down for Tuesday apparently with the acquiescence of Mr. Smith." If the defendant were insane at the time of the trial, the law provides a method of protecting him by a special plea of insanity, under which the court must determine his plea of insanity before he is even required to plead to the indictment. *Baughn* v. *State,* 100 *Ga.* 554, 557 (28 S. E. 68, 38 L. R. A. 577). Of course, under the defendant's general plea of not guilty, he may prove that he was insane at the time of the alleged criminal act even though he be sane at the time of the trial. At the time the case was called for trial on June 19, 1944, so far as the record shows, there was no intimation that the defendant was then and there insane, and when the case was again called for trial on June 20, 1944, the motion for a continuance was made on account of the illness and absence of the defendant's leading counsel, associate counsel stating: "I have not talked to a single witness in this case and I have only been employed as associate counsel. All I know about Mr. Smith's condition is what I was told by a young lady in his office in Carrollton. She called me and said that he would not be able to come

to court to-day on account of an accident he had going home." The court stated to counsel, "that he had not made a sufficient showing with reference to Mr. Smith's illness," and asked if there was any other evidence. The associate counsel replied, "No, sir." The court overruled the motion and ordered the trial to proceed. Up to this time the court had not been informed by a special plea or otherwise that it was expected to be proved that the defendant was ·or had been insane at any time. After the motion to continue on account of illness of counsel had been overruled, as above indicated, the associate counsel requested that he be allowed additional time to get a record in regard to the defendant's insanity, and being sworn testified: "Mr. Smith had in his records on yesterday a certified copy of the records of the ordinary's court of Carroll County as to the mental condition of this party, and I have not got any evidence in hand this morning. He also had a certified copy of the discharge from the army of the defendant. As to that I could not state as to its admissibility or whether it is proof of his mental condition." There was still no direct statement by a special plea of insanity or by associate counsel that the defendant was unable to look after his interest at the time the motion for a continuance was made, or to testify on said motion. If the alleged copy of the inquisition finding the defendant insane in the court of ordinary was rendered after the crime was committed it could not be admitted in evidence. *Murphy* v. *State, 70 Ga. App.* 387 (28 S. E. 2d, 198). As to the contents of the defendant's discharge from the army, associate counsel expressly stated that he did not know whether it would be admissible or whether it contained proof of the defendant's mental condition. Thus at the time of the overruling of the motion for a continuance it did not appear that the absent leading counsel had in his possession any evidence which would be legally admissible. There being no specific plea of insanity and no specific statement or evidence by anyone that the defendant contended that he was insane at the time of the motion for a continuance, and no reason appearing why the defendant should not have testified that the motion was not made for delay only, we can not say that the court abused its discretion in holding that the showing for a continuance was insufficient. It might be noted here that whatever legal evidence there was of undertaking to show insanity appeared after the overruling of the motion for a continuance.

In the instant case the application was made by one of the attorneys for the defendant. Furthermore, neither in the application nor in the evidence adduced upon the hearing thereof was there any direct statement or testimony that the application was not made for delay only. "Continuances on account of the absence of counsel are not favored, and a strict showing is required." *James* v. *State,* 150 *Ga.* 76 (102 S. E. 425). "It is no ground for a new trial that the court refused to continue, because of the absence of one of the prisoner's counsel, on whom he principally relied, from sickness, the affidavit for continuance only saying that the affiant had been informed by letter of the sickness; especially if it appear that other competent counsel are employed and do appear in the trial." *Loyd* v. *State,* 45 *Ga.* 57 (4). It appears in the instant case that another competent counsel was employed and participated in the trial of the case. Furthermore, no affidavit or other legal evidence by a physician, or by any other person, stating that the absent counsel was ill and unable to attend court was presented to the judge *during the hearing of the application.* The only evidence as to the illness of counsel was a statement by several witnesses that *they had been informed by other persons* that counsel was ill; and the judge then stated: "The court will have to hold that you have not made a sufficient showing with reference to Mr. Smith's illness." Since no affidavit or other evidence (except hearsay evidence) as to counsel's illness was presented to the judge upon the hearing of the application, it was unnecessary for the State to make a counter-showing. In *Chivers* v. *State,* 5 *Ga. App.* 654 (63 S. E. 703), the motion for continuance was based on the ground that the defendant's leading attorney was ill and unable to attend the trial; that movant could not go safely to trial without the services of said counsel; that he expected said services at the next term of the court; and that his application for continuance was not made for delay only. In support of the motion in the *Chivers* case, "the defendant introduced his own affidavit and the affidavit of the attending physician of his absent counsel, in which he fully supported the specific allegations contained in the motion." While, as before stated herein, in the instant case no affidavit or other legal evidence was introduced, *on the hearing of the motion for continuance,* to prove the illness of the absent counsel.

A month and a half later, when the defendant was unfolding his motion for a continuance at the time of the hearing of the motion for new trial, the only evidence of probative value introduced as to counsel's illness was the statement in his affidavit which was as follows: "That he returned home on the afternoon of the 19th and became ill, but [on the 20th] started to Atlanta in his automobile alone; that after going a few miles he grew much worse and had to return home; that when he got home he found that Dr. Scales and Dr. Reese, witnesses for the defendant, and the defendant's father, had already gone to Atlanta, and he had no way, or time, to get a certificate of a doctor or to send a certificate to Atlanta, and that he requested his secretary, Miss Lillian Teal, to call the judge (Mr. Hooper), or Mr. Andrews, his associate counsel in the case, and request them to continue the case for a day or so until he recovered sufficiently to try the case." There is no direct statement in this affidavit that the motion for a continuance was not made for delay only. Counsel further stated in his affidavit attached to the motion for a new trial that the reason he did not submit the certificate of a doctor at the time of the hearing of the motion for a continuance was that "when he got home he found . . that he had no way, or time, to get a certificate of a doctor or send a certificate to Atlanta." However, a month and a half later, at the hearing of the motion for a new trial, and after the counsel had had time to get such a certificate if he wished to do so, no affidavit of a doctor as to counsel's illness was made a part of the motion for a new trial. The record does not show whether the certificate was not filed because of a lack of diligence, or through inadvertence, or because counsel had not obtained or preferred not to introduce it, or why it was not done. The court, in the absence of such affidavit of a doctor, might have determined that the affidavit of counsel introduced in the motion for a new trial (as held in *Anderson* v. *State,* 72 *Ga.* 98, 102) was not, in connection with all the other facts and circumstances, full, satisfactory, and direct as to material allegations necessary for showing the purpose for which it was introduced, in that it did not affirmatively disclose that counsel was ill as contemplated in the Code, § 81-1413. See also *Wall* v. *State,* 126 *Ga.* 86 (54 S. E. 815).

"The illness of counsel contemplated by law is such a physical condition resulting from sickness, ailment, malady, or disease, as

would prevent counsel from properly attending to his duties as such." Whatever the physical condition of the counsel was at the time the motion for a continuance was made, the trial court was entitled to a sufficient showing as to his illness before continuing the case, or thereafter before granting a new trial. The counsel himself is not, under all circumstances, the judge of whether he was merely indisposed, or whether his illness is such as is contemplated in the Code, § 81-1413; for the court is the tribunal vested with the authority to decide from the facts and circumstances of this case as to whether the illness was a legal illness. The court might have further determined that the showing for a continuance was not complete, in that there was no direct statement under oath, either at the time of the application for a continuance or at the hearing of the motion for a new trial, that the application was not made for delay only. *Rawlins* v. *State,* 124 *Ga.* 31 (52 S. E. 1). "A showing for a continuance on the ground of the absence and illness of leading counsel is not complete, under section 3525 [81-1413] of the Code, without a statement on oath that the application is not made for delay only." *Burnett* v. *State,* supra; *Newsome* v. *State,* supra. There is no direct, affirmative statement *under oath anywhere in the record* that the application for a continuance was not made for delay only. *Roth* v. *State,* 70 *Ga. App.* 93 (27 S. E. 2d, 473). Nor is there any proper showing at the time of the motion for continuance that leading counsel, at the time of his absence in question, had in his possession any legal evidence that was admissible tending to show the insanity of the defendant at the time of the hearing of the motion for a continuance. The affidavit of leading counsel, Mr. Smith, referred to above and introduced at the time of the hearing of the motion for new trial, stated: "That on June 19th, he went to Atlanta when the case was assigned for trial before Judge Hooper; that he had a showing for a continuance on the ground that the defendant was insane, as was shown by the affidavits of two doctors. Said affidavits are hereto referred to and made a part of this affidavit." The doctors are not named in Mr. Smith's affidavit, and even though leading counsel had a showing as to the insanity of the defendant, which he could have presented on June 19th, and even though he, at that time, had in his possession the affidavit of the two doctors, this does not necessarily show that counsel made such a showing on June 19th,

for, relative to this, Judge Hooper states that on June 19th counsel asked that the case be set for trial on June 21, but that he set it for trial on June 20, apparently with the consent of counsel. There appears in the record, attached after the judge's certificate an affidavit of Doctors S. F. Scales and D. S. Reese, which states that the defendant is now (June 17, 1944) insane. This affidavit immediately follows the affidavit of Mr. Smith, but is not entitled in the cause and is not referred to as an exhibit, and, even if it relates to a ground of the motion for a new trial, can not be considered by this court when transmitted in the record as a part of the record, where the affidavit is not referred to in such motion, nor attached to the motion as an exhibit, nor filed under the order of the judge and then made a part of the record. *McDonald* v. *State,* 129 *Ga.* 452 (59 S. E. 242); *Glover* v. *State,* 128 *Ga.* 1 (57 S. E. 101); *Harman* v. *Stange,* 62 *Ga.* 167. In short, although attached in the record, it is without any identification by the judge. *Taylor* v. *Cook,* 51 *Ga.* 215; *Fisher* v. *State,* 73 *Ga.* 595, 603 (7). But even though the affidavit of Doctors Scales and Reese, although attached in the record immediately after the affidavit of Mr. Smith, had been properly identified, we still think that, in view of the fact that these two doctors appeared and testified as witnesses in behalf of the defendant on the trial, in which, notwithstanding their testimony, he was found guilty, we should not say that the judge abused his discretion in overruling the motion for new trial. It might be here noted that over a month after the motion for continuance was made, and when the motion for new trial was heard, it was not shown that a copy of the inquisition in the court of ordinary or the discharge of the defendant from the army, both of which were referred to at the time of the motion for a continuance, would have been admissible in evidence on the motion for a continuance. "The presiding judge has a discretion in ordering the business of his court and determining whether it is proper to postpone a case or not; and it is only in instances of flagrant abuse in the exercise of such discretion that this court will interfere." *Clay* v. *Barlow,* 73 *Ga.* 787 (2); *Roth* v. *State,* supra. The majority of the court do not think that the trial judge abused his discretion in overruling the motion for a continuance on the ground of illness of counsel, and in thereafter deciding that special ground 1 of the motion for a new trial was

not meritorious. Hence we can not say that the overruling of the motion for a continuance was reversible error.

2. Special ground 2. This ground as it appears in the record shows that the ruling of the court was favorable to the defendant, for the court overruled the State's objection to the testimony in question. This ground is not meritorious.

3. Special ground 3. The court charged the jury as follows: "Gentlemen, the law makes you the exclusive judges of the credibility of the witnesses, who have testified in this case. In passing upon their credibility you may take into consideration their manner and demeanor while on the witness stand, their interest or want of interest in the outcome of the case or any party to the case, and the reasonableness or unreasonableness of their testimony, their bias or prejudice, if that should appear in the case, their means and opportunity for knowing the facts to which they testified, their intelligence, the probability or improbability of their testimony, and you may consider their personal credibility in so far as the same appears from the trial of this case." The defendant insists that the use of the words, "you may take into consideration their manner and demeanor while on the witness stand, their respective interest or want of interest in the outcome of the case or any party to the case," was very harmful to the defendant in the case at bar for the reason that his defense was insanity and he made no statement in the trial of the case. The defendant having made no statement it seems obvious to us that this mere inadvertence of the judge was not harmful error which would require a new trial.

4. Special grounds 4 and 5. The judge gave to the jury clearly and fairly the law applicable to the issue of insanity, as it was involved under the evidence in the instant case. *Central Ry. Co.* v. *McKinney,* 118 *Ga.* 535 (45 S. E. 430). Here there were no requests to charge and, if the defendant wanted a fuller charge, he should have so requested.

5. Special ground 6. This ground complains of the following charge of the court, to wit: "When the issue of such insanity is presented the burden is on the defendant to show to the reasonable satisfaction of the jury that at the time of the alleged commission of the act charged against him he was insane. Whether or not that has been done either by evidence from the State, or established by evidence from the defendant, or both, is a question

to be determined by the jury. It is not necessary that the defendant sustain his defense of insanity to your satisfaction beyond a reasonable doubt, but only that he shall establish it to the reasonable satisfaction of the jury by a preponderance of the evidence. If the defendant's evidence as to the alleged insanity, either by itself or taken with the other testimony in the case, is sufficient to create in your minds a reasonable doubt as to his guilt, it would be your duty to give the defendant the benefit of that doubt and find him not guilty," on the ground that "it placed an undue burden upon the defendant 'to show to the reasonable satisfaction of the jury that at the time of the alleged commission of the act charged against him he was insane,' the law being that the defendant must show his insanity by a preponderance of the evidence and not to the reasonable satisfaction of the jury or to a reasonable certainty, but only by a preponderance of the evidence." We think that the contention in this assignment of error is decided adversely to the defendant in *Thompson* v. *State,* 191 *Ga.* 222, 230 (11 S. E. 2d, 795).

6. Special ground 7 is decided adversely to the defendant in *Bargeman* v. *State,* 17 *Ga. App.* 807 (88 S. E. 591). See also *Brooks* v. *State,* 63 *Ga. App.* 575, 581 (11 S. E. 2d, 688).

7. Special ground 8 is decided adversely to the defendant in *Brooks* v. *State,* supra, wherein it is said: "Nor is it error, in the absence of a request, to fail to charge that in the commission of a crime there must be joint operation of act and intent or criminal negligence."

8. The evidence authorized the verdict.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

GARDNER, J. dissenting. Under the record of this case I feel compelled to dissent. In order to make myself clear I feel it necessary to recite additional portions of the record as to the mental condition of the defendant as shown at the trial of his case and his mental condition the day before the trial, when a motion for a continuance was made, in order that such record on these two occasions may shed light on the mental condition during the period from the date of the commission of the crime until the date of the trial.

The defendant made no statement either on the day prior to his trial when the first motion for a continuance was made, or on the

day of the trial when a motion for a continuance was made, or at the trial in the main case. I concur in the majority opinion on all the grounds except general ground 3 and special ground 1, which relate to a motion for a continuance made by associate counsel in the absence of leading counsel. I will first give the additional evidence which relates to the mental condition of the defendant at the time of the commission of the crime, this being the sole defense urged on his behalf. The defendant made no statement, so all the evidence as to this feature of the case came from witnesses introduced in his behalf. This evidence is in substance as follows: Dr. S. F. Scales, of Carrollton, Georgia, testified that he was a graduate of Emory University School of Medicine, class of 1910; that he had taken post graduate work in Chicago; that he was president of the Emory University Alumni Association and president of the Carrollton Medical Association; that he had known the defendant all of the defendant's life; that he was with the defendant's mother at the time the defendant was born; that the defendant's family lived in the country four or five miles out from Carrollton; that he had had constant contact with the family; that the defendant was twenty-two years old; that he had not examined the defendant, but that he had had occasion to observe him daily; that he was a normal boy at the time he was born and generally until a few years ago; that he had noticed that for several years the defendant did not appear to be entirely normal; that he made no examination of the defendant, but did talk with the physician about him; that the defendant went into the army and he did not know how long he remained in the army; that since he came back from the army his condition has been progressively worse; that in the last few years he did not appear to be normal; that he would not say anything; that he does not seem to take an interest in things now; "I have not noticed whether he would talk with his lawyers or not; I am a friend of his father and live there in the community; at this time this boy is insane; that is my opinion; that opinion is not based on his conduct since the indictment; the opinion is not based on talks I have had with him or times I have seen him since June 1, 1944. . . I don't think I talked with him much, but I have noticed him since that time. . . He seems to me he is not in a normal condition. I did not treat him and did not attempt to talk to him. I am not an expert

on sanity, and did not qualify as an expert; it is not my intention to qualify as such. I am not an expert on the question of insanity; I am only interested in the condition of the boy. I am not a nerve specialist. I know the various forms of insanity; but I have not made a study of them. I could not answer just [what] form of insanity he is suffering from, but he seems to be suffering from the irrational type. That is the type where he imagines that something is absolutely right when it was wrong and he would say he was perfectly normal. I would not say he is absolutely insane, and I would not say he is perfectly normal. There are days when he is apparently normal. You ask if that is insanity or if he is an idiot. No, I would not call him an idiot. I believe he has lucid intervals. I think that when one suffers from delusions that insanity exists at that time. He is insane for that time."

The mother of the defendant testified: That the defendant seemed to be all right before he went into the army; that he is now off some way; that he looks like he can't understand since he came home; that he did his work all right around home until he went into the army; that he looked like he didn't understand the work and that sometimes he would and sometimes he wouldn't, since he came out of the army; that he went into the army in 1941, and that he has been back something like six months; that he had a medical discharge. She further testified that she had her son examined "for his mind" since he returned from the army. She had other children and they were perfectly normal. She testified that her son wouldn't seem to know what he was doing; she would pick cotton and the defendant would try to pick but wouldn't pick any, and he would be thinking about something else; that he had a bump on his head and claimed that it hurt him.

Clarence Sharp testified that he was a neighbor of the defendant's family; that the defendant had always been unreliable since he had been out of the army; that he would just walk around and didn't pay much attention and didn't notice people; that the witness had been with him a good deal; that he and the defendant "ran together" before the witness married; that the defendant would just stand around, would work some, but not much; "he doesn't seem to be normal since he got back from the army."

D. F. Brooks testified that he was a neighbor of the defendant's family, living about four miles from them; that he thought the

defendant was all right before he went to the army, and that since he had returned he just wanders around. The witness talked with the defendant at different times and observed his mental condition and that "he didn't seem to be normal." He could not point out any particular thing he observed concerning his mentality, but said the defendant was different from his brothers.

The father of the defendant testified that the defendant's mental condition was different since he returned from the army from what it was before; that on one occasion he obtained a shotgun and stated to the witness that he intended to shoot himself, and that he talked him out of it; that the defendant wouldn't talk when he would try to talk to him; that it seemed like he has lost his mind. When he found his son in jail in Atlanta he would not talk; he didn't seem to realize it; he was not at himself.

Dr. D. S. Reese testified that he lived at Carrollton, Georgia; that he was a practicing physician, with his office in Carrollton; that he had been practicing since 1906; that he was a graduate of the Atlanta School of Medicine; that he was a member of the Carrollton Medical Association and also a member of the American Medical Association; that he had had an opportunity to observe the defendant for several years; that he had known the defendant practically all of the defendant's life; that he never saw the defendant in his home, but that he had seen him in Carrollton on the streets, and had an occasion to observe him and his condition and notice the expression in his eyes; that when asked something it would have to be repeated several times before he would pay any attention, then he would turn and answer as if he were dazed; that in the opinion of the witness the defendant is not normal; from the defendant's face and from his appearance and other various ways you can tell he is unbalanced.

There appears in the record a joint affidavit made by Dr. S. F. Scales and Dr. D. S. Reese, the doctors who testified at the trial. This affidavit was made on June 17, 1944, and was introduced in evidence before the trial court on June 19, 1944, when the first motion for a continuance was made by leading counsel to postpone the case from the 19th to the 21st, but which motion was denied and the case set for the 20th. This affidavit, although not specified as an exhibit in the motion for a new trial, appears in the record. We quote this affidavit, as well as the certificate of the

clerk of the superior court as to the high standing of these doctors, as follows: "Georgia, Carroll County. In person appeared before me an officer duly authorized by law to administer oaths in and for said county, Dr. S. F. Scales and Dr. D. S. Reese, who after being duly sworn, depose and say: That they are each regular practicing physicians and surgeons in Carrollton, Georgia, and have practiced medicine and surgery in Carrollton and Carroll County, Georgia, for more than thirty years continuously. Affiants say that they are personally acquainted with W. O. McKenzie, and that they have known him practically all of his life; that they made a personal physical examination of the said W. O. McKenzie, and that he recently suffered or had a severe injury to his head, hip, and ankle, and that his ankle is now in a cast and that he is now in very poor physical condition. Affiants say that they made a personal and physical examination of the said W. O. McKenzie to ascertain the condition of his mind. That the said W. O. McKenzie is insane at this time and a fit subject for the insane asylum; that they think it is not safe for him to be at large; that he is likely to do himself some personal injury or some other person. Affiants further say that he is not in physical or mental condition to go into the trial of a case and that he could not be of any assistance to his counsel, and that he is physically unable to attend court. [Signed] S. F. Scales, M.D.; D. S. Reese, M.D. Sworn to and subscribed before me this the 17th day of June, 1944. T. J. H. Robertson, Clerk of S.C. Seal superior court, Carroll County, Georgia." The clerk's certificate reads: "Georgia, Carroll County. I, T. J. H. Robertson, clerk of the superior court of Carroll County, Georgia, do hereby certify that I am personally acquainted with Dr. S. F. Scales and Dr. D. S. Reese, and that they are regular practicing physicians and surgeons residing in Carrollton, Georgia, and have practiced in this County for more than thirty years, and that each of them is of the highest character, and [they are] leading doctors and surgeons of the community and are of high standing as citizens and in their profession. June 17, 1944. [Signed] T. J. H. Robertson, clerk of the superior court, Carroll County, Georgia. Seal."

I am aware that technically the affidavit of the two doctors, though appearing in the record, may not be a part of the record as to special ground 1, but it is in the record in this case. It is a fair

inference, from what the court said when the motion as specified in special ground 1 was overruled, that the affidavit of the doctors was used in the motion for a continuance on the day before the trial. Being in the record and being so tied in with the allegations of special ground 1, I think it is not entirely foreign to a fair consideration of this case under ground 3 of the general grounds, and under special ground 1. Therefore, to my mind, the line of decisions cited in the majority opinion on the principles held in *McDonald* v. *State,* 129 *Ga.* 452 (59 S. E. 242), are not applicable to the peculiar facts of this case. Miss Teal's affidavit (which is quoted in the majority opinion) substantiates the testimony of Mr. Andrews, as well as that of Mr. Smith, both of which relate to the mental condition of the defendant at the time of the trial, when the motion for continuance was made. It must be kept in mind that the motion for a continuance made by Mr. Andrews, associate counsel, on the day of the trial, was based on two grounds: First, that leading counsel was absent on account of illness; and second that he (Andrews) had not talked to a single witness, and was unprepared to go to trial because he was only associate counsel; that he was not in possession of certain documentary evidence which leading counsel had in his possession; and that associate counsel moved that the case be delayed in order that associate counsel might have sufficient time to procure the same.

The additional evidence (as above set forth) shows that this defendant was an ex-soldier who, according to the testimony of his mother, "had a medical discharge [from the army]; he was discharged for medical reasons they said." Surely as hard put as we are for men to fight our war he would not have been discharged except for medical reasons. Mr. Andrews was pleading for an opportunity and only sufficient time to obtain this evidence which leading counsel had. The jury were deprived of it. Then, too, it appears from this special ground that the court of ordinary of Carroll County had, in a solemn judgment, adjudged this defendant insane. Granting that this judgment was rendered since the commission of the crime, it raised a presumption that the defendant was insane on the date of the trial and therefore would have put the burden on the State to rebut it by proof. If associate counsel had been allowed sufficient time to have gotten it from leading counsel and had had sufficient time to familiarize himself

with the facts of the case in order to have filed a special plea as to the insanity of the defendant at the time of the trial, the issue as to the sanity of the accused at the time of the trial could have been presented to the jury. And this certified copy would have been admissible to show such presumption. If the judgment of the court of ordinary shows that this adjudication of the defendant's insanity had been rendered prior to the commission of the crime (and the record is silent as to when it was rendered), a certified copy would have been admissible in evidence to show that the presumption was that the defendant was insane at the time of the commission of the crime, and the burden would have been on the State to rebut the solemn findings of this judgment. As the case was tried without this certificate, the burden of proving the defendant's insanity was on him to establish it by a preponderance of the evidence. The Code, § 38-118, provides: "Other presumptions of law, such as of innocence, and in some cases of guilt, of continuance of life for seven years, of a mental state once proved to exist, and all similar presumptions, may be rebutted by proof." The majority opinion cites on this point *Murphy* v. *State,* 70 *Ga. App.* 387 (28 S. E. 2d, 198), where it was held: "1. Criminal responsibility is determined by the condition of the accused's mind at the time he committed the criminal act. 2. A copy of the inquisition, or judgment, in the court of ordinary finding the defendant insane, rendered a month after the crime was committed, was properly not admitted in evidence on the trial of a criminal accusation in the criminal court of Fulton County. Aliter, where the inquisition had adjudged the defendant 'habitually insane' before the commission of the crime. 3. For the purpose of shedding light on the defendant's state of mind at the time the alleged crime was committed, evidence of his condition, as shown by his acts and conduct, or as shown by any other competent evidence, may be shown both before and after the alleged criminal act, if properly connected up. 4. If properly connected up, the defendant's condition on the very day of the inquisition, whether the inquisition was before or after the commission of the crime, may be shown by the witness or witnesses who testified in the proceeding in the ordinary's court which adjudged him insane, or by any other competent evidence that he was insane on that day." In my view *Murphy* v. *State* proves the very point I am trying to make,

that the jury should have had the benefit of this solemn judgment of the court of ordinary to prove the presumptive conclusion of law that this defendant was insane either at the time of the commission of the crime or at the day of the trial. The defendant was deprived of his constitutional right by the hastiness which forced him to trial without such evidence, brought about by no fault of his own. It matters not what occasioned the absence of the leading counsel, who possessed certain documents on the day of the trial. Unnecessary delay should be abhorred in both the trial courts and the appellate courts, but more to be abhorred should be such haste in either court as would deprive anyone of his rights guaranteed to him by the supreme law of the land.

As I have stated heretofore, in my opinion this case should be reversed on general ground 3, "because the verdict is contrary to law and the principles of justice and equity," when this ground is viewed in connection with the assignments of error based on special ground 1. To aid in an over-all view of the defendant's mental condition on the day before the trial and on the day of the trial, I think such entire record ought to be considered. The judge stated in overruling the motion in special ground 1 that he had on the day before the trial passed on the mental condition of the defendant, and that was behind him. The affidavit of the doctors followed this case from the 19th day of June until now, and is still with it. Moreover, it is undisputed that on the day before the trial, and presumably on the day of the trial, the defendant had been adjudged insane, to say the least of it, since the commission of the crime. Therefore the affidavit of the doctors is but in corroboration of this fact. According to this fact, the defendant was presumed to have been insane on the day of the trial and now. All of this was within the breast of the court at the time he overruled this motion for a new trial, and it is within the breast of this court now, according to this record. The majority opinion is to the effect that the judge, at the time he overruled the motion, had no intimation of the defendant's mental condition as contained in special ground 1, but his remarks as set out in special ground 1 show that he did have such intimation. I think it is a fair inference to assume that he thought a special plea of insanity would be filed. Perhaps I would have thought the same thing on June 19, the day before the trial. And under this record I think such plea

should have been filed, and that is one point of contention between the majority and myself. I think that under this record any lawyer would have done so. Mr. Smith didn't file it. Why? Because he was not present. Mr. Andrews didn't file it. Why? Because he hadn't talked to any witnesses; he had not prepared the case; he did not have a certified copy of the record of the court of ordinary adjudging the defendant insane. Neither did Mr. Andrews have a copy of the discharge, and the trial court refused to delay the case in order that Mr. Andrews might talk to the witnesses and procure these documents. The defendant was forced to trial under these circumstances. Yet the majority holds that the case should not be reversed because no special plea of insanity was filed. The defendant was convicted under the general issue. That had only to do with the insanity of the defendant at the time the crime was committed. In a case of the gravity of this one, an attorney needs some time in which to talk to witnesses, procure the documentary evidence, and prepare and file his plea. It can not be done on the spur of the moment, without opportunity to talk to the witnesses, to obtain documentary evidence, and to prepare his plea. Mr. Andrews was only asking for this time and for a sufficient delay of the trial to accomplish these things. It matters not how competent he might be, to deprive him of such preparation violated the defendant's constitutional right to have counsel of his own choosing or that of his family (in this case Mr. Smith), or some other counsel appointed by the court, with sufficient time granted by the court in which to prepare the case. Forcing Mr. Andrews to trial, under the circumstances of this case, was the same in effect as the court appointing counsel and forcing appointed counsel to trial without preparation. In the event of appointed counsel, the Supreme Court has held that a formal motion for a continuance is not necessary. *McArver* v. *State,* 114 *Ga.* 514 (40 S. E. 779).

In addition to what I have hereinabove said, I give herein what appears to me to be irrefutable reasons why the court abused its discretion in denying a motion for a continuance: (a) It is my opinion that the trial judge abused his discretion in overruling the motion for a continuance, although I have no difference of opinion with my associates as to the law cited and relied on as to this ground of the motion for a continuance. But it is my opin-

ion that the authorities cited are not applicable to the facts of this case, and that to so hold is to deny the defendant his constitutional right of having an attorney of his own choosing try his case, and to force him to trial with an unprepared attorney. The crime for which the defendant was convicted was indeed reprehensible and repulsive, and the penalty is severe—life. But still this is the more reason why the court should not act with undue haste. The defendant was incapable of assisting his attorneys in the preparation of his case, and was forced to have his case presented by an attorney who stated under his oath and in his place that he had not talked with "a single witness;" that he did not have any documentary evidence concerning the mental condition of the defendant, but that the leading counsel did have some such documentary evidence; that associate counsel had been informed that the leading counsel was sick. However, the majority opinion says that the motion was incomplete because the defendant did not testify that it was not made for delay only. If the record is to be believed, the defendant was insane the day before the trial and inferentially on the day of the trial, which was the following day. An insane person could not make a motion. This court has held that the requirement of the statute must be strictly complied with, and the party must himself make the oath, and the essentials must affirmatively appear. See *Mosley* v. *Bridges,* 71 *Ga. App.* 156 (30 S. E. 2d, 355). This court is committed to the law that the party himself must make such motion. It is beyond my reason to comprehend that anyone could read this record and reach the conclusion that this defendant was possessed of sufficient mentality on either the 19th or the 20th, to make such a motion. Yet the defendant is charged in the majority opinion with the responsibility of not personally perfecting such motion, even in such a mental state. I can not conceive that the statute was ever intended or designed to have application to such a case as is here presented.

(b) The trial judge seems to have proceeded to trial on the premise that he was not authorized to grant a further continuance on the 20th, since he had denied a continuance on the previous day, under the Code, § 24-3342. That section reads as follows: "Motions to be insisted on at once.—All grounds of motion for nonsuit, in arrest of judgment, for continuance, all objections to testimony, and all exceptions to declarations, must be urged and

insisted upon at once. After a decision upon one or more grounds, no others afterwards urged shall be heard by the court." It is true that Mr. Smith's associate counsel did ask for further delay in order that he (associate counsel) might obtain certain documents concerning the mentality of the defendant. The mental state of the defendant was the only question presented on the previous day. The court correctly reasoned that if insane at the time of trial a special plea could be filed to this effect. But it must be kept in mind that the basis for the motion which was made on the day of the trial and which was made by associate counsel, was that the leading counsel was absent for providential reasons, and had material documents. Certainly the trial court had the power to grant a continuance because of the absence of leading counsel for providential reasons, and providential causes which occurred since the overruling of the motion for a continuance the day before. The writer thinks that the main plea of associate counsel for continuance was for time in order that he might become familiar with the case and procure the documents concerning the mentality of the defendant, some of which were in the possession of the leading counsel. In no view can it be concluded that the motion for continuance made on the day of the trial was the same as the motion made the day before.

(c) It is stated in the majority opinion that perhaps the court denied the motion for a continuance on the ground that the affidavit of leading counsel in this special ground was not supported by affidavits of an attending physician. However, in my view, the trial court did not base it on this ground. From the record, the trial court sincerely thought it his duty to refuse to continue the case since there was a competent attorney to represent the defendant, and since the provisions of the Code, § 81-1413, had not been complied with, or for some other reason. That section reads as follows: "Absence or illness of counsel as cause for continuance.—The illness or absence, from providential cause, of counsel where there is but one, or of the leading counsel where there are more than one, shall be a sufficient ground for continuance: provided, the party making the application will swear that he can not go safely to trial without the services of such absent counsel, and that he expects his services at the next term, and that said application is not made for delay only." As to the opinion and facts in *James*

v. *State,* 150 *Ga.* 76 (102 S. E. 425), quoted in part by the majority opinion, the facts of that case show several differences from those of the case at bar. The *full* opinion on this point reads: "*All applications for continuances are addressed to the sound legal discretion of the court.* Penal Code, § 992. 'Continuances on account of the absence of counsel are not favored, and a strict showing is required; *particularly where other competent counsel have been secured, and no injury is shown.*' *Poppell* v. *State,* 71 *Ga.* 276 (2).'' Headnote 2 of the *James* case reads: "Where such a motion was predicated on a statement of associate counsel 'in his place,' that the absent counsel 'was in New York State, sick, and that he would not be physically able to appear in court if he was here,' it was not error to overrule the motion. The evidence of the absent counsel's illness was too indefinite as to time and when employment began, and appeared to be based on the opinion of one other than a physician, without disclosing the source of his information. *Loyd* v. *State,* 45 *Ga.* 57 (4).'' (Italics mine.) The above is all of the opinion even remotely bearing upon the question before us. The facts of the *James* case do not show when the attorney was to return, associate counsel did not state that he was not familiar with the case, and there was no contention that the defendant was insane. Furthermore, the absence in that case showed no injury or prejudice to the defendant. In my opinion the overruling of the motion in the instant case showed grave injury to the defendant. The defendant was deprived of his constitutional right.

In *Loyd* v. *State,* supra, cited by the majority opinion, the facts of that case are entirely different from those of the case at bar, in that in the *Loyd* case it appears that the attorneys who were there were originally employed by the client, and that they had been "in" on the investigation from the beginning. Moreover, the court stated that each case must stand upon its own facts and that the court did not care to reiterate the reasons for the application of the principle. In *McArver* v. *State,* supra, it appears from the facts that the defendant had been in jail for two months and had employed counsel who abandoned the case. The court thereupon appointed counsel and forced the defendant to immediate trial. The Supreme Court, in passing upon the question of continuance, said in part: "In several cases this court has ruled that the trial judge

committed no error in forcing a defendant to trial soon after the appointment of counsel; but the rulings in these cases were held to be proper by this court because of the facts and circumstances of each particular case. However, no ruling has yet been made which impairs the force of the constitutional provision [it is certain that the court had in mind the case of *Loyd* v. *State,* supra], . . that every person charged with an offense . . shall have the privilege and benefit of counsel. This constitutional privilege would amount to nothing if the counsel for the accused are not allowed sufficient time to prepare his defense; . . *It can certainly make no difference that counsel made no formal motion for a continuance,* nor gave the names of the witnesses whose presence he desired. He . . was not familiar with the case. . . *The motion to postpone the case to such a time as would enable counsel to investigate it and secure the attendance of witnesses should have been granted. We say this without any examination of the affidavits submitted . . and without any reference to the real merits of this case, and base the reversal of the judgment alone on the ground that the refusal to postpone the trial, under the circumstances set out, was a denial to the defendant of the privilege of the benefit of counsel, a right which was his whether guilty or innocent."* (Italics and brackets mine.) What is the difference in principle in a case where counsel abandoned the case (and the Supreme Court said such was abuse of discretion), and in the present case, where leading counsel was stricken ill, or if not ill, for any reason neglected his trust? Certainly in each case so far as the defendant is concerned there is no difference. Our whole legal system is supposedly set up to the end that justice may be accomplished for those who come within its penal scope, the defendant here, not the dereliction of counsel. We might assume that leading counsel, Mr. Smith, on the day of the trial abandoned his client, instead of being ill as he swore. Yet the unfortunate client was forced to trial by the court with only the assistance of associate counsel, who undisputedly had not had the burden, and had not the responsibility, and had not prepared the case. So far as the effect on the accused is concerned, I can see no difference. Then too, it must be noted that the Supreme Court said that *the lack of a formal motion can not deprive an accused of his constitutional rights.* There is no evidence in the case at bar that the defendant

employed associate counsel, but on the contrary there is evidence that he did not—that associate counsel was employed by leading counsel, and not even by the defendant's father, since the defendant's father had not spoken to associate counsel about the case. All the information the associate counsel had, if any, was from the leading counsel, Mr. Willis Smith. So far as the defendant's rights are concerned, the result was the same as if the court had appointed counsel and forced him to trial without preparation, as to force associate counsel who was unprepared to go to trial. On this point the majority opinion cites *Anderson* v. *State,* 72 *Ga.* 98, 102, *Burnett* v. *State,* 87 *Ga.* 622, *Rawlins* v. *State,* 124 *Ga.* 31, 54, and *Wall* v. *State,* 126 *Ga.* 86. The first of these four cases does not apply. It had to do with the absence of a witness. The second is not applicable because it is so different in its facts. In it the case had been continued previously on the same ground of the absence of leading counsel, and the court had notified the parties thirty days before that it would not be continued again for that reason. Then too, no oath was attached that the motion was not made for delay, but the facts of that case do not show that the defendant there was mentally incapable of making an oath as it appears in the case at bar. In the third case, cited in the majority opinion, it appears that the counsel in that case was present and himself vigorously urged his inability to proceed with the case, and the appellate court simply held that the trial court had a right to take into consideration the apparent vigor of leading counsel in arguing and presenting the motion for a continuance, and stated this court would take into consideration the vigorous manner in which such counsel conducted the trial of the case. Under the facts of the instant case, the *Rawlins* case has no application, because of dissimilar facts. In the *Wall* case it appears, among other things: "The court certifies that absent counsel was at the county seat on the evening before the trial, apparently well, though on the day succeeding the trial he was at the county seat 'complaining somewhat.' The court further certifies that he did not regard the illness of absent counsel as at all serious, and from the evidence submitted did not think he was the leading counsel. The attorney who appeared in court for the defendant was employed to represent him before the committal court. The accused did not appear at the committal court nor at the term of the superior court at

which the indictment was found. The absent attorney wrote the trial judge, a few days before the trial, that he was not employed by the defendant. Under the evidence submitted to support the motion, and the certificate of the judge, we think there was no abuse of discretion in refusing a continuance on this ground." From this quotation it is evident that the facts in that case can hardly be said to be applicable to the facts of the instant case.

(d) It must be remembered that the State made no counter-showing that Mr. Smith, the leading counsel, was not detained from the trial by providential causes. It is undisputed that he was on his way to the courthouse, alone, on the day of the trial, when he was taken ill and that he had to return to his home for this reason. It is undisputed that he had pertinent documentary evidence in his possession as to the mentality of the accused, which bore on the insanity of the accused at the time of the trial and at the time of the commission of the alleged crime. It is undisputed that the trial judge was informed of these facts. It is undisputed that only a sufficient time was asked, a day or two, until leading counsel could recover sufficiently to try the case. It is undisputed that the associate counsel informed the court that he had not talked to a single witness, that he was unprepared to present to the court and to the jury the mental condition of the defendant, and the case of the defendant. It is undisputed that the alleged crime was committed on June 1st; that the indictment was procured on June 2d, that leading counsel, located in a distant county (the home of the defendant's family), was procured to represent the defendant on the 14th or 15th; that the case was set for trial on the 19th; that the mental condition of the defendant was brought to the attention of the trial court on the 19th; that the case was assigned for trial on the 20th, and was tried on the 20th in the absence of leading counsel who was stricken ill while on his way to the trial. Let us by analogy illustrate: Suppose leading counsel of a defendant had left his downtown office in Atlanta on his way to the courthouse of Fulton County to try a case, and was temporarily stricken ill (and did not or could not secure a physician before he recovered) and was forced to return to his office and had his secretary notify the judge through an associate counsel who had not prepared the case as to the condition of the client, and who had not talked to a single witness; and suppose the client

was insane at the time of the trial; and further suppose the trial court had overruled the motion for a continuance made by the associate counsel, and that the client was tried and convicted in the absence of leading counsel and that all of these facts appeared from the record uncontradicted, and the trial court refused to grant a new trial on such a ground—could it be said that the trial court did not abuse its discretion? I do not think so.

(e) Where it is contended that the accused was insane at the time of the alleged commission of the crime, this question is tried under the general issue of not guilty. Where it is contended that the accused is insane at the time of the trial, this issue must be presented by a special plea and tried by a special jury. See Ga. Code Ann., §§ 27-1501, 27-1502, and notes and cases cited thereunder. If the leading counsel, who had made all the investigations in the case and who had talked to the witnesses, had been present, I can not say from the record that he would not have filed a special plea of insanity at the time of the trial. Neither can I say that associate counsel, under the facts of this case, would not have done so if he had had sufficient time and opportunity, and responsibility, to prepare and present this issue. Neither can I say that the defendant should be penalized, under the facts of this case, because such defense was not urged for him. If such had been done, neither can I say that a jury would not have found in favor of such plea under the evidence as it appears in this record; if such had been the result, the defendant, if insane, either at the time of the commission of the act or at the time of the trial, would have received treatment rather than life penal servitude. Neither can I say that if leading counsel who had investigated the case had been present with all the evidence which the record shows that he had in his possession, in addition to what was produced, that a jury would not have found the defendant guilty under the general issue, and the defendant properly committed to the insane asylum in accordance with the findings of the ordinary's court of Carroll County.

(f) This court held in *Johnson* v. *State*, 1 *Ga. App.* 729 (57 S. E. 1056), that where a defendant in a criminal case had employed counsel who was absent because of the unintentional mistake of the solicitor-general as to when the case would be tried, and the court overruled the motion, the case would be reversed. Also,

in *Chivers* v. *State,* 5 *Ga. App.* 654 (supra), this court reversed the decision of the trial court in overruling a motion for postponement on account of the absence of leading counsel for the defendant for providential cause. The majority opinion cite that case in support of their opinion. While it is true that in the *Chivers* case the defendant more fully met the requirements of the Code section, but it must not be overlooked that in the *Chivers* case there is no evidence of the mental unsoundness of the defendant, and it must also not be overlooked that the affidavit of leading counsel in the instant case states that on the day of his illness "Dr. Scales and Dr. Reese, witnesses for the defendant, and the defendant's father had gone to Atlanta, and he had no way or time to get a certificate of a doctor or send a certificate to Atlanta" as to the sickness of leading counsel. In this day of scarcity of physicians it should be easy to realize that their services are hard to procure, even in the most urgent cases. Then too it is common knowledge that oftentimes an attorney may be temporarily ill with some affliction which would deprive him of going into a trial involving the gravities of the instant case and still be able to recover within a few hours or a few days without treatment of a physician. It is common knowledge that this has often happened in the best of faith and without any question. But the majority opinion contends that the leading counsel a month and a half later did not have, in the motion for a new trial, a doctor's certificate. If counsel could not and did not have a doctor's attendance upon him when he swore he was sick when the motion for a continuance was made, he could not possibly have obtained a certificate from an honest physician a month and a half later, or at any other time thereafter.

The Supreme Court in *Delk* v. *State,* 100 *Ga.* 61 (27 S. E. 152), reversed the trial court in denying a motion for postponement where the leading counsel was absent because of an honest misunderstanding as to just when the case would be tried. The Supreme Court said: "The provision in the 'bill of rights' declaring that 'every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel,' confers upon every person indicted for crime a most valuable and important constitutional right, and entitles him to be defended by counsel of his own selection whenever he is able and willing to employ an attor-

ney and uses reasonable diligence to obtain his services. No person meeting these requirements shall be deprived of his right to be represented by counsel chosen by himself, or forced to trial with the assistance only of counsel appointed for him by the court." See also *Reliford* v. *State*, 140 *Ga.* 777 (79 S. E. 1128), wherein the Supreme Court stated: "As was said in the case last cited [*Harris* v. *State*, 119 *Ga.* 114, 45 S. E. 973]: 'Undue haste in the administration of the criminal law is as much to be condemned as unnecessary delay. The true course lies between these two extremes. The law vests the determination of questions relating to the time of trial in the discretion of the trial judges; and this court will not interfere with their rulings on the subject, unless it is manifest that there has been an abuse of discretion.'" I also wish to call attention to *Walker* v. *State*, 194 *Ga.* 727 (22 S. E. 2d, 462). In the last-mentioned case while not as to facts squaring with the instant case, it is emphatically strong in discussing the principle that one accused of crime involving grave consequences is entitled, under the constitution, to have counsel of his own choosing or of the choosing of his family, to represent him. Under the facts of the instant case, as the writer sees it, the unfortunate defendant in this case was deprived of that right just as effectually as the defendants in any of the cases cited. Mr. Andrews, associate counsel, was obtained by Mr. Smith to assist Mr. Smith, the leading counsel. This is a customary practice among the profession for an out-of-town attorney to associate a local attorney to assist in striking the jury or in looking into particular phases of a case, under the direction and responsibility of leading counsel—a kind of liaison relationship.

The writer is of the opinion that the trial judge abused his discretion in denying the motion for continuance. Then too, the evidence under the general grounds strongly tends to influence me to the view that the evidence preponderates in favor of insanity at the time of the commission of the act. This, coupled with the fact that the leading counsel swore without contradiction that his absence was providentially caused, adds to the reasons why this case should be reversed. Finally, as to the motion for continuance, I might observe that in none of the cases cited in the majority opinion does it appear that the counsel who tried the case did not have as much information as to what the witnesses for the defend-

ant would testify and what the line of defense would be as did the absent counsel. In each of the cases cited in this dissenting opinion where the appellate courts reversed the trial court for an abuse of discretion in failing to continue the case, it does appear, as it appears in the instant case, that the counsel who was forced to trial with the defendant's case was unfamiliar with what the testimony would be and what the plan of the defense would be, or should be. Under a careful analysis of the two lines of decisions, the one in the majority opinion and the other in the dissenting opinion, there is a clear distinction between the two and a wide difference in principle. That the facts of the instant case place it in the line of those cases which are set forth in the dissenting opinion, is perfectly clear to my mind. I concur in the rulings of the majority except as herein stated contrarily.